405 So.2d 418 (1981)
Stacy Clyde JOLLIE, Petitioner,
v.
STATE of Florida, Respondent.
No. 59158.
Supreme Court of Florida.
July 30, 1981.
Rehearing Denied November 24, 1981.
Robert J. Buonauro, Orlando, for petitioner.
No appearance for respondent.
PER CURIAM.
This case involves the legal issue we recently resolved in Tascano v. State, 393 So.2d 540 (Fla. 1980), and a procedural issue regarding the jurisdiction of this Court which requires clarification in light of the 1980 amendment to article V, section 3, of the Florida Constitution. It is the latter issue which commands our attention here, and for which a recitation of the history of this case and of conflicting decisions on the Tascano issue is essential.
On January 2, 1980, the Fifth District Court of Appeal addressed a legal issue concerning requested jury instructions on *419 which disparate views were then held among the district courts of the state. In Murray v. State, 378 So.2d 111 (Fla. 5th DCA 1980), a majority of the panel court concluded that this Court's rule on requested instructions was mandatory. A contrary view had been expressed by a panel of judges in the First District Court of Appeal in Tascano v. State, 363 So.2d 405 (Fla. 1st DCA 1978). Despite their conclusion on the mandatory nature of the rule, however, the panel majority in Murray affirmed his conviction on the ground that the failure to give requested instructions in his situation was harmless error. Judge Orfinger agreed with the Tascano judges that the Court's rule was optional, for which reason he concurred in the court's affirmance of Murray's conviction.
Other cases involving this very legal issue were pending in the Fifth District. Shortly after the Murray decision was published, the court entered orders summarily disposing of three of them  Knight v. State, 379 So.2d 1017 (Fla. 5th DCA 1980), Allen v. State, 380 So.2d 541 (Fla. 5th DCA 1980), and Jollie v. State, 381 So.2d 351 (Fla. 5th DCA 1980). Each of these dispositions read simply:
"Affirmed. See Murray v. State [citation]."
Petitions for certiorari were filed here in Murray, Knight, and Allen before April 1, 1980. A petition for review was filed in Jollie after that date. The intervention of the 1980 amendment placed Mr. Jollie in a different position than Messrs. Murray, Knight, or Allen with respect to the possibility of Supreme Court review. That fortuity, it will be seen, has created the procedural problem we now face.
We agreed to review the First District's Tascano decision, and we eventually declared that our rule regarding requested jury instructions is indeed mandatory, quashing the district court's contrary decision. Tascano v. State, 393 So.2d 540 (Fla. 1980). We accepted jurisdiction in Murray on the basis of direct jurisdictional conflict. The Murray decision conflicted on its face with the First District's decision in Tascano by holding that the rule was mandatory rather than directory and conflicted with the result we reached in Tascano because it negated the mandatory effect of the rule by applying the harmless error doctrine. We have consequently this day, by separate opinion, quashed the district court's opinion in Murray on the basis of Tascano, concluding that the harmless error rule should not apply. Murray v. State, 403 So.2d 417 (Fla. 1981). We have also accepted jurisdiction in Knight and Allen under the 1972 constitutional provision and granted relief in accordance with our decisions in Tascano and Murray. Knight v. State, 401 So.2d 1333 (Fla. 1981).
Petitioner Jollie's treatment by the Fifth District Court of Appeal was identical to that of Allen and Knight. Jollie, however, became the victim of happenstance, delayed processing through the district court resulting in his case reaching this Court after the effective date of the 1980 constitutional amendment limiting Supreme Court jurisdiction.
Under our interpretation of the 1980 amendment, this Court will not reexamine the case referenced in a "citation PCA" to determine whether the contents of that case now conflict with other appellate decisions. Dodi Publishing Co. v. Editorial America, S.A., 385 So.2d 1369 (Fla. 1980). In a similar light, if the referenced case is a final decision and not pending review in this Court, we will not reexamine the case referenced even when the district court filed that case contemporaneously with the citation PCA. Robles Del Mar, Inc. v. Town of Indian River Shores, 385 So.2d 1371 (Fla. 1980). The question which we must now confront is in what posture we should place a citation PCA where the cited case is either pending review in this Court or has previously been reversed by this Court. Restated, we must decide whether Mr. Jollie should be denied relief because he was the recipient of such a decision after the effective date of the 1980 amendment.
The quartet of Tascano-related cases from the Fifth District Court of Appeal presents the problem in sharp focus. We *420 here endeavor to deal with this situation in a forthright manner in order to provide clear directions for the avoidance of future difficulties in like situations. This can be done without undermining the intent and purpose of the 1980 reforms.
Justice Thomas, the father of Florida's district courts of appeal and the strongest advocate of the principle that the district courts "were meant to be courts of final appellate jurisdiction," said this Court had no authority to "dig into a record to determine whether or not a per curiam affirmance by a district court of appeal conflicts." See Lake v. Lake, 103 So.2d 639, 642-43 (Fla. 1958).
If in a particular case an opinion is rendered by a district court of appeal that prima facie conflicts with the decision of another district court of appeal or of the Supreme Court on the same point of law, the writ of certiorari may issue, and after study, may be discharged, or the decision of the district court of appeal may be quashed or modified to the end that any conflict may be reconciled.
Id. at 643 (emphasis ours). This rule applies equally well under the 1980 amendment as it did under the amendment's 1956 predecessor.
Prior to the 1980 amendment, a PCA decision which referenced another district court decision that this Court had reversed or quashed, was prima facie grounds for conflict jurisdiction. This long-standing policy decision was in effect well before the "record proper" doctrine was conceived and adopted in Foley v. Weaver Drugs, 177 So.2d 221 (Fla. 1965). The reasoning behind that policy decision continues to have validity. Common sense dictates that this Court must acknowledge its own public record actions in dispensing with cases before it. We thus conclude that a district court of appeal per curiam opinion which cites as controlling authority a decision that is either pending review in or has been reversed by this Court continues to constitute prima facie express conflict and allows this Court to exercise its jurisdiction.
The situation presented in this cause ordinarily applies only to a limited class of cases. The problem arises from the practical situation which faces all appellate courts at one time or another  that is, how to dispose conveniently of multiple cases involving a single legal issue without disparately affecting the various litigants. Traditional practice in dealing with a common legal issue in multiple cases, both in district courts and here, has been to author an opinion for one case and summarily reference that opinion on all the others. Being time- and laborsaving for a court, that practice should not be discouraged.
We believe, however, that there can be improvement in the procedure through which district courts can isolate for possible review in this Court those decisions which merely reference to a lead opinion, as we now have for review, as distinguished from those per curiam opinions which merely cite counsel-advising cases such as in Dodi Publishing. There are two prongs to the problem, and we believe each can be treated by the judges of the district courts without undue problems.
First, we suggest the district courts add an additional sentence in each citation PCA which references a controlling contemporaneous or companion case, stating that the mandate will be withheld pending final disposition of the petition for review, if any, filed in the controlling decision. In essence, this will "pair" the citation PCA with the referenced decision in the district court until it is final without review, or if review is sought, until that review is denied or otherwise acted upon by this Court. If review of the referenced decision is requested, the parties may seek consolidation here. In any event, the district courts' withholding of the mandates will dispose of the need for separate motions to stay mandates in those courts. This simple process, moreover, can be accomplished administratively in the district courts, in the clerks' offices, without significant activity by the judges either before or after the controlling decision is filed with or acted upon by this Court.
*421 A second aspect of the problem calls for a different approach. We recognize that no litigant can guide the district court's selection of the lead case, and that the randomness of the district court's processing would control the party's right of review unless the citation PCA is itself made eligible for review by this Court. To resolve fully this problem, we further suggest that the district courts devise one or more methods to distinguish a contemporaneous or companion case  for example, with distinguishing citation signals or by certifying that an identical point is at issue in the cited case[*]  from cases which offer a mere counsel notification citation. We have no doubt that district court judges can produce one or more methodologies to preserve the review strictures of the 1980 amendment on the one hand, while on the other eliminating the possible injustice inherent in foreclosing review to some of several equally situated litigants.
We reaffirm that mere citation PCA decisions rendered in the traditional form will remain nonreviewable by this Court, for the reasons stated in Dodi Publishing and Robles Del Mar. The circumstances of those cases are clearly distinguishable from a district court PCA opinion which cites as controlling a case that is pending review in or has been reversed by this Court.
We grant review in this proceeding and quash the district court's decision on the basis of our decisions in Murray v. State and Tascano v. State.
It is so ordered.
SUNDBERG, C.J., and OVERTON, ENGLAND and McDONALD, JJ., concur.
ADKINS, J., concurs in result only.
BOYD, J., dissents with an opinion.
ALDERMAN, J., dissents.
BOYD, Justice, dissenting.
Invoking our discretionary jurisdiction under article V, section 3(b)(3), Florida Constitution, the petitioner seeks review of a district court of appeal decision which the court announced as follows:
Affirmed. See Murray v. State, 378 So.2d 111 (Fla. 5th DCA 1980).
Jollie v. State, 381 So.2d 351 (Fla. 5th DCA 1980). That portion of article V, section 3(b)(3), upon which petitioner relies in asserting that this Court has power to review the decision provides:
The supreme court:
.....
May review any decision of a distinct court of appeal ... that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law.
The decision of which the petitioner seeks review  an affirmance of the judgment appealed, rendered without opinion except for a citation of authority  does not, and under article V, section 3(b)(3) as amended in 1980 cannot, "expressly and directly" conflict with another decision. Therefore we lack the authority to consider the petition for review.
Prior to the amendment of April 1, 1980, this Court had the authority to consider a petition for certiorari to review a district court of appeal decision on the ground of direct conflict, even when the decision brought here for review was rendered without opinion. In order to establish that the Court had jurisdiction the petitioner had to demonstrate, by reference to the record, that a legal issue had been brought before the court on appeal, and that the decision, in passing upon the legal issue, was in direct conflict with another district court decision or a decision of the supreme court. Foley v. Weaver Drugs, Inc., 177 So.2d 221 (Fla. 1965). See Note, Conflict Certiorari Jurisdiction of the Supreme Court of Florida: *422 The "Record Proper", 3 Fla.St.U.L.Rev. 409 (1975). By adopting the 1980 amendment, however, restricting that category of review to decisions that "expressly and directly" conflict, the people have taken away that authority.
The intent of the framers and the adopters of the 1980 amendment has already been addressed by this Court. The public discussion and debate that preceded the approval of the amendment "provides a frame of reference by which to ascertain the intent of the voters in adopting the amendment." Jenkins v. State, 385 So.2d 1356, 1363 (Fla. 1980) (England, J., concurring) (footnote omitted). During that period of public discussion, the framers of the amendment, as well as other legal and constitutional experts, told the public what effect the amendment would have if adopted:
At hearings before the legislature and in countless meetings with representatives of The Florida Bar, The Conference of Circuit Judges of Florida, the Appellate Judges' Conference, The League of Women Voters as well as other interested organizations too numerous to recount, members of this Court represented that one of the intents and effects of the revision of section 3(b)(3) was to eliminate the jurisdiction of the Supreme Court to review for conflict purposes per curiam decisions of the district courts of appeal rendered without opinion, regardless of the existence of a concurring or dissenting opinion. These same representations were made consistently to the public at large preceding the ballot on the proposed amendment. There can be little doubt that the electorate was informed as to this matter, because opponents of the amendment broadcast from one end of this state to the other that access to the Supreme Court was being "cut off," and that the district courts of appeal would be the only and final courts of appeal in this state. With regard to review by conflict certiorari of per curiam decisions rendered without opinion, they were absolutely correct.
The pertinent language of section 3(b)(3), as amended April 1, 1980, leaves no room for doubt. This Court may only review a decision of a district court of appeal that expressly and directly conflicts with a decision of another district court of appeal or the Supreme Court on the same question of law. The dictionary definitions of the term "express" include: "to represent in words"; "to give expression to." "Expressly" is defined: "in an express manner." Webster's Third New International Dictionary, (1961 ed. unabr.). The single word "affirmed" comports with none of these definitions.
Jenkins v. State, 385 So.2d 1356, 1359 (Fla. 1980).
The holding of Jenkins was that under the new constitutional amendment, this Court may not review, on grounds of conflict, a district court decision rendered without opinion even though a dissenting judge filed a "comprehensive opinion which recited the facts extensively and concluded that the trial court had erred." Id., 385 So.2d at 1357. In Dodi Publishing Co. v. Editorial America, S.A., 385 So.2d 1369, 1369 (Fla. 1980), we held that we did not have jurisdiction to review a district court decision rendered without opinion other than a citation of authority saying:
We reject the assertion that we should reexamine a case cited in a per curiam decision to determine if the contents of that cited case now conflict with other appellate decisions. The issue to be decided from a petition for conflict review is whether there is express and direct conflict in the decision of the district court before us for review, not whether there is conflict in a prior written opinion which is now cited for authority.
Since the issue is "whether there is express and direct conflict in the decision ... before us for review," it follows that we simply cannot consider petitions for review based on conflict when the decision is not accompanied by an opinion expressing any view on a question of law. A citation of authority is not an opinion.
In Robles Del Mar, Inc. v. Town of Indian River Shores, 385 So.2d 1371 (Fla. 1980), we *423 again held that we lacked jurisdiction to review a district court decision rendered without opinion but with a citation of authority. We noted, however, that the case cited by the district court in issuing the decision sought to be reviewed, was filed on the same day and was "a final decision of the district court." Id. at 1371. By "final" we meant that the cited, contemporaneous decision was no longer subject to being reviewed by this Court. That unfortunate language, holding open the question upon which today's decision is in part predicated, was our first relapse into the much decried tendency to think of the district courts of appeal as "way stations on the road to the Supreme Court." Lake v. Lake, 103 So.2d 639, 642 (Fla. 1958). A decision of a district court of appeal is "final" when it has been disposed of by that court on rehearing or the time for seeking rehearing has expired. One does not have to wait and see whether supreme court review is sought before calling such decisions "final."
The 1980 amendment demonstrated an intent that the Supreme Court, in the exercise of its discretionary jurisdiction, be limited to hearing cases having important ramifications for the state's jurisprudence. The change was motivated in part by a desire to preserve the resources of the Court for the task of maintaining harmony and uniformity of decisions as legal precedents. The amendment represents an express negation of the idea of the Supreme Court, except in exercise of its appellate jurisdiction, as the court of last resort for the individual litigant in his quest for individual justice. Jenkins v. State, 385 So.2d 1356 (Fla. 1980); England, Hunter, and Williams, Constitutional Jurisdiction of the Supreme Court of Florida: 1980 Reform, 32 U.Fla.L.Rev. 147 (1980). Today's decision places an emphasis on the justice of the petitioner's cause that the constitution does not permit.
The majority opinion says that even before Foley v. Weaver Drugs, Inc., a district court decision without opinion but citing a case that had been reversed by the supreme court provided prima facie ground for the exercise of conflict certiorari jurisdiction. I have been unable to find any decisional or documentary authority for that statement. The majority cites only "common sense," and refers us to Justice Thomas's formulation of conflict certiorari jurisdiction in Lake v. Lake, 103 So.2d 639 (Fla. 1958).
In his advocacy of the restrictive approach to conflict jurisdiction, Justice Thomas was in essence pleading for self-restraint on the part of the Court, to the end that the district courts would come to be regarded as courts of final appellate jurisdiction. By "prima facie" conflict it seems clear that he meant conflict of principles announced in opinions. But even Justice Thomas acknowledged that conceivably conflict certiorari jurisdiction might exist in the absence of an opinion. In such a case, the fact that "a conflict had arisen" would "appear from the restricted examination required in proceedings in certiorari." Id. at 643. What would Justice Thomas have examined in the absence of an opinion stating the legal basis for the decision? In such a context the "restricted examination required in proceedings in certiorari" must have meant examination of the "record proper" as subsequently relied upon in Foley v. Weaver Drugs, Inc. Thus any pre-Foley review of decisions without opinion would have been on the basis of conflict appearing on the "record proper."
My understanding of the effect of the 1980 amendment, based on its history, its interpretation in Jenkins, Dodi Publishing and Robles Del Mar, and on other authorities, is that by adding the word "expressly," the people intended to overrule Foley and, for purposes of discretionary "conflict" review jurisdiction, do away with the concept of the "record proper."
The addition of the term "expressly" should vastly improve supreme court practice under section 3(b)(3). The much-maligned and confusing doctrine of "record proper" will have been interred, saving the justices immeasurable time and effort in locating alleged decisional conflict. The clerk's office will be able to screen petitions to ascertain if they are supported by a written opinion of a district *424 court, and those without such support will simply be returned to the filing attorney. The court's review process for exercising its discretion will be expedited considerably by the district court's discussion of the point of law brought for review, enabling significantly shorter jurisdictional briefs. Moreover, where jurisdiction is accepted, the court will have a better basis for making an informed decision since the written opinions of the appellate courts will most likely analyze both sides of the same issue.
England, Hunter, and Williams, Constitutional Jurisdiction of the Supreme Court of Florida: 1980 Reform, 32 U.Fla.L.Rev. 147, 181 (1980) (emphasis supplied) (footnote omitted). Yet the majority today, in discussing the practical problems of the district courts' appellate processes, still speaks of the adversely affected party's "right of review" and the Court's duty to "acknowledge its own public record actions in dispensing with cases before it." Opinion of the Court at 420. Does this mean the clerk cannot simply return petitions for review of unexplained decisions to the filing attorneys? Must the Court consider every petition for review? Are the people powerless to remove a category of discretionary review jurisdiction?
I had thought that the whole point of the revision of conflict jurisdiction was to disallow petitions for review of decisions without opinion. We would thereby gradually put an end to the practice by attorneys of automatically seeking review on behalf of the adversely affected litigants. But the Court today, in making what appears to be a very narrow exception, is opening the gate the voters thought they had firmly closed. Experience teaches us that narrow classes have a tendency to expand. The Court's decision is a challenge to the ingenuity of lawyers, and prompts me to repeat the words of Justice Thornal: "If I were a practicing lawyer in Florida, I would never again accept with finality a decision of a District Court." Foley v. Weaver Drugs, Inc., 177 So.2d at 234 (Thornal, J., dissenting).
Under article V, section 3(b)(3) as amended in 1980, a decision rendered without opinion other than a citation of legal authority does not establish any precedent and therefore cannot expressly and directly conflict with another decision on a question of law. The publication of such a decision announces the result to the litigants and to the public. But the report of such a decision does not reveal what principle of law was applied to the case, nor what the facts of the case were.
After 1956, when the people adopted the constitutional amendment creating the district courts of appeal and establishing the decisional conflict certiorari jurisdiction of the supreme court, there began a lively controversy that continues to the present day.
It was early recognized that the district courts of appeal were to be courts of final appellate jurisdiction and that the "conflict" basis for certiorari jurisdiction was designed to allow the supreme court the supervisory role of resolving legal conflicts among the districts and maintaining uniformity of decisions. Lake v. Lake, 103 So.2d 639 (Fla. 1958); Ansin v. Thurston, 101 So.2d 808 (Fla. 1958).
In light of the emphasis in Ansin v. Thurston and Lake v. Lake on decisions as precedents, in Seaboard Air Line R.R. v. Branham, 104 So.2d 356, 358 (Fla. 1958), the Court said that the term "decision" as used in the constitution "comprehends both the opinion and judgment." But a debate began on the question of whether to emphasize uniformity of written appellate court precedents or uniformity in the decisions of appellate courts.
In Foley v. Weaver Drugs, Inc., 177 So.2d 221 (1965), the majority reasoned that the judgment of a case constitutes the decision, "and the opinion merely sets forth the reasons supporting the judgment... ." Id. at 224. Justice Drew, who had espoused the restrictive decisions-as-precedents view in Ansin v. Thurston, concurred with the majority in Foley, and wrote that the Court needed to be able to review decisions rendered without opinion in order to maintain *425 uniformity. Such decisions, he reasoned, did constitute precedents to judges and lawyers who knew what legal questions had been ruled upon by the lower court judge.
In Gibson v. Maloney, 231 So.2d 823 (Fla.), cert. denied, 398 U.S. 951, 90 S.Ct. 1871, 26 L.Ed.2d 291 (1970), the majority said, "It is conflict of decisions, not conflict of opinions or reasons that supplies jurisdiction... . When comparing decisions it may be necessary to consult the record to some extent." Id. at 824. See also Seaboard Air Line R.R. v. Williams, 199 So.2d 469 (Fla. 1967), cert. denied, 390 U.S. 920, 88 S.Ct. 851, 19 L.Ed.2d 979 (1968).
Prior to the 1980 amendment, the difficulties and ambiguities of conflict certiorari jurisdiction were such that the question of whether this Court should focus on conflict of precedents or conflict of decisions was a fairly debatable one. My predecessors, former colleagues, and present colleagues struggled with the problem and argued about it with eloquence. But the question is debatable no longer.
Being of the opinion that the Court has no jurisdiction of this case, I would deny the petition for review.
NOTES
[*] As an example of the possibilities, see the certification on rehearing in Griffin v. State, 389 So.2d 261 (Fla. 4th DCA 1980), pending in this Court (No. 59,964), which states:

[W]e certify that our affirmance in this case passed upon the same questions we certified ... in Lawrence v. State [388 So.2d 1250 (Fla.App.)].... The decision in this case should abide the decision in Lawrence.