530 So.2d 286 (1988)
THE FLORIDA STAR, Appellant,
v.
B.J.F., Appellee.
No. 71615.
Supreme Court of Florida.
September 1, 1988.
*287 George K. Rahdert and Bonita M. Riggens of Rahdert, Acosta & Dickson, P.A., St. Petersburg, for appellant.
Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, and Beckham, McAliley & Schulz, P.A., Jacksonville, for appellee.
Alan C. Sundberg of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, Tallahassee, Gerald B. Cope, Jr. and Laura Besvinick of Greer, Homer, Cope & Bonner, P.A., Miami, Richard J. Ovelmen, General Counsel, The Miami Herald Pub. Co., Miami, Paul J. Levine of Spence, Payne, Masington, Grossman & Needle, Miami, Florida; and Sanford L. Bohrer of Thomson, Zeder, Bohrer, Werth & Razook, Miami, Florida, amici curiae for The Miami Herald Pub. Co., The Florida First Amendment Foundation, The Florida Press Ass'n, and The Florida Soc. of Newspaper Editors.
BARKETT, Justice.
This case is before us on the following question of Florida law certified by the United States Supreme Court:
Whether the Florida Supreme Court had jurisdiction, pursuant to Article V, § 3(b)(3)[1] of the Florida Constitution or otherwise, to hear Appellant's appeal [petition for review] in this cause from the Florida First District Court of Appeal?
The Florida Star v. B.J.F., ___ U.S. ___, 108 S.Ct. 499, 499, 98 L.Ed.2d 498 (1987). We have jurisdiction. Art. V, § 3(b)(6), Fla. Const. As delimited by this opinion, we answer in the affirmative.
The Florida Star, a Jacksonville newspaper, published the name of a rape victim that police erroneously had included in material released to the press pretrial. There is no dispute that the name should not have been released and that the newspaper itself had a policy against the publication of rape victims' names. Publication appeared to be a criminal violation under section 794.03, Florida Statutes (1985).[2]
B.J.F., the rape victim, brought a civil action premised on a statutory duty arising from section 794.03. The Florida Star moved for dismissal based on the ground that the theory of recovery violated the first and fourteenth amendments. In denying this motion, the trial court ruled that no such violation would occur, and it specifically upheld the constitutionality of section 794.03.
On appeal, the Florida Star again challenged the constitutionality of the statute. The district court affirmed but did not discuss section 794.03 except to quote it verbatim, nor did it expressly uphold the statute against appellant's constitutional challenge.
The Florida Star subsequently filed a jurisdictional brief with this Court, seeking discretionary review. Review summarily was denied. The Florida Star v. B.J.F., 509 So.2d 1117 (Fla. 1987).
On August 26, 1987, the Florida Star sought review in the United States Supreme Court. Appellee filed a motion to dismiss on grounds the appeal was untimely. Appellee argued that the Florida Supreme Court lacked jurisdiction to review the case, and that the opinion of the First District thus was the final decision of the highest state court empowered to hear the cause. Under this argument, the Florida *288 Star should have appealed to the United States Supreme Court within ninety days of the First District's opinion. The United States Supreme Court then certified the instant question to this Court.
We do not read the question presented by the Supreme Court as a request to explain the internal mechanism of the court or to attempt the impossible task of second-guessing the original panel's decision on jurisdiction. Nor do we believe, as appellee suggests, that the present court should reexamine the question and decide anew whether conflict existed.
Instead, we limit our answer to the context in which the question was posed. For that sole purpose, we answer the question in the affirmative. This Court in the broadest sense has subject-matter jurisdiction under article V, section 3(b)(3) of the Florida Constitution, over any decision of a district court that expressly addresses a question of law within the four corners of the opinion itself.[3] That is, the opinion must contain a statement or citation effectively establishing a point of law upon which the decision rests. The opinion in B.J.F. unquestionably met this requirement.
We premise our holding on our conclusion that article V, section 3(b)(3) creates and defines two separate concepts. The first is a general grant of discretionary subject-matter jurisdiction, and the second is a constitutional command as to how the discretion itself may be exercised. In effect, the second is a limiting principle dictated to this Court by the people of Florida. While our subject-matter jurisdiction in conflict cases necessarily is very broad, our discretion to exercise it is more narrowly circumscribed by what the people have commanded:
(b) JURISDICTION.  The supreme court:
... .
(3) May review any decision of a district court of appeal ... that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law.
Art. V, § 3(b)(3), Fla. Const.
Thus, it is not necessary that conflict actually exist for this Court to possess subject-matter jurisdiction, only that there be some statement or citation in the opinion that hypothetically could create conflict if there were another opinion reaching a contrary result. This is the only reasonable interpretation of this constitutional provision. As the final authority on the meaning of the Florida Constitution, see Art. IV, § 1(c), and Art. V, § 3(b)(1), (3), Fla. Const., this Court has the final and inherent power to determine what constitutes express and direct conflict. No other authority exists, except the people pursuant to their power to amend the constitution, that may nullify this Court's pronouncements on that question.
This, by definition, is discretion, not jurisdiction. As noted in Black's Law Dictionary 419 (5th ed. 1979), discretion is
the exercise of judicial judgment, based on facts and guided by law... . It is a legal discretion to be exercised in discerning the course prescribed by law and is not to give effect to the will of the judge, but to that of the law.
Subject-matter jurisdiction, on the other hand, is defined as:
Power of a particular court to hear the type of case that is then before it... . jurisdiction over the nature of the cause of action and relief sought....
Id. at 767. While this Court has subject-matter jurisdiction to hear any petition arising *289 from an opinion that establishes a point of law, we have operated within the intent of the constitution's framers, as we perceive it, in refusing to exercise our discretion where the opinion below establishes no point of law contrary to a decision of this Court or another district court.
We thus conclude that we had complete subject-matter jurisdiction to hear B.J.F. and decide the case on its merits with finality. This jurisdiction must be regarded as complete until the time the petition for review was denied. Moreover, the denial of review in B.J.F. did not operate to deprive this Court of its subject-matter jurisdiction retroactively, but merely constituted the point in time at which jurisdiction, for whatever reason, had ended.
We confess that we are much influenced in this holding by the procedural quagmire that would result from a negative answer. To seek review of a state court judgment in the United States Supreme Court, a litigant first must exhaust all avenues of review available in the courts of the state. The fact that review in the highest court is discretionary is irrelevant; the litigant still must seek such review in order to proceed to the United States Supreme Court. American Ry. Express v. Levee, 263 U.S. 19, 20-21, 44 S.Ct. 11, 12-13, 68 L.Ed. 140 (1923); Stratton v. Stratton, 239 U.S. 55, 56-57, 36 S.Ct. 26, 27, 60 L.Ed. 142 (1915).
It is therefore essential to the preservation of a litigant's right to United States Supreme Court review that he or she know with certainty the avenues of appellate review required by the courts of the state. If, after the fact, we held in a case such as this that there was no jurisdiction, litigants would be placed in a needlessly burdensome position. A party would have to try to predict which court ultimately would recognize jurisdiction in the case and file a petition for review accordingly. A party who files only in the United States Supreme Court, however, would risk the objection that he or she has not exhausted state court remedies. On the other hand, a party who files only in the Florida Supreme Court and is denied review, would risk the objection made by B.J.F. here that the later appeal to the United States Supreme Court is untimely.
Alternatively, a party could file a petition for review in both the Florida Supreme Court and the United States Supreme Court simultaneously, simply to protect his or her rights. This solution would entail double work, separate briefs, and much more expense for the clients. Moreover, a stay would likely need to be sought in the United States Supreme Court because the appeal in that Court would not be ripe for review unless and until this Court denied review or otherwise disposed of the case. The situation is further aggravated by the fact that, on some occasions, this Court agrees to review a case on the merits, but after briefing or argument determines that review was improvidently granted.
No purpose is served by this duplication of effort, added expense and uncertainty. We do not believe the people intended such a result when they amended the constitution in 1980.
For the foregoing reasons, we answer the certified question in the affirmative. This opinion shall be transmitted forthwith to the United States Supreme Court.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] This section vests the Florida Supreme Court with subject-matter jurisdiction over cases that manifest express and direct conflict with opinions of another district court or of this Court. For convenience, this type of jurisdiction usually is called "conflict jurisdiction."
[2] The statute states:

No person shall print, publish, or broadcast, or cause or allow to be printed, published, or broadcast, in any instrument of mass communication the name, address, or other identifying fact or information of the victim of any sexual offense within this chapter. An offense under this section shall constitute a misdemeanor of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[3] This Court does not, however, have subject-matter jurisdiction over a district court opinion that fails to expressly address a question of law, such as opinions issued without opinion or citation. Thus, a district court decision rendered without opinion or citation constitutes a decision from the highest state court empowered to hear the cause, and appeal may be taken directly to the United States Supreme Court. Moreover, there can be no actual conflict discernible in an opinion containing only a citation to other case law unless one of the cases cited as controlling authority is pending before this Court, or has been reversed on appeal or review, or receded from by this Court, or unless the citation explicitly notes a contrary holding of another district court or of this Court. See Jollie v. State, 405 So.2d 418, 420 (Fla. 1981).