754 So.2d 759 (2000)
Floyd WATKINS, Appellant,
v.
GILBRIDE HELLER & BROWN, P.A., Lawrence Heller and Timothy Henkel, Appellees.
No. 3D99-681.
District Court of Appeal of Florida, Third District.
March 8, 2000.
Bedzow, Korn, Brown, Miller & Zemel, and Franklin L. Zemel, Aventura, and Teri L. DiGiulian, Fort Lauderdale, for appellant.
Mitrani, Rynor, Adamsky, Macaulay & Zorrilla, and Pamela A. Chamberlin, and Isaac J. Mitrani, Miami; Kenny Nachwalter Seymour Arnold Critchlow & Spector, *760 and Michael Nachwalter, Miami, for appellees.
Before GERSTEN, FLETCHER, and SORONDO, JJ.
FLETCHER, Judge.
Floyd Watkins appeals an adverse final summary judgment in a legal malpractice claim against his former attorneys, appellees Gilbride Heller & Brown, P.A., Lawrence Heller and Timothy Henkel [GHB]. We reverse and remand for further proceedings.
This malpractice action arises out of a lawsuit brought by NCNB National Bank of Florida [NCNB] against Watkins. Watkins hired GHB to defend him against NCNB's action, and to file a counterclaim for damages. Watkins lost the NCNB litigation. An appeal was taken to this court which affirmed the trial court's decision, and on September 21, 1993, denied Watkins' subsequent request for rehearing. See Watkins v. NCNB Nat'l Bank of Fla., N.A., 622 So.2d 1063 (Fla. 3d DCA 1993). Watkins then hired new counsel who sought review by a petition for writ of certiorari to the Florida Supreme Court, which petition was denied by that court on January 14, 1994. See Watkins v. NCNB Nat'l Bank of Fla., N.A., 634 So.2d 629 (Fla.1994).
On January 12, 1996, just shy of two years after the supreme court's action, Watkins filed a malpractice claim against GHB. The trial court granted summary judgment in favor of GHB finding the two-year statute of limitations began to run on the date we denied rehearing (September 21, 1993) and expired on September 21, 1995, thus the claim was barred. Watkins claims on the other hand that the limitations period did not begin to run until the Florida Supreme Court denied his petition for certiorari review (January 14, 1994). We agree with Watkins that the limitations period began to run only after the supreme court's determination. Thus this malpractice action is not time barred.
Our analysis starts with section 95.11(4)(a), Florida Statutes (1997), which provides that the statute of limitations for professional malpractice is two years, "commencing from the time the cause of action is discovered or should have been discovered with the exercise of due diligence."[1] In Silvestrone v. Edell, 721 So.2d 1173, 1175 (Fla.1998), the Florida Supreme Court construed this language in the context of litigation-related malpractice and held that the two-year statute of limitations under section 95.11(4)(a) begins to run when "a final judgment becomes final."[2] The court stated its intent to create a "bright line rule," and gave an example or two of when the finality of a final judgment occurs:
"For instance,[[3]] a judgment becomes final either upon the expiration of the time for filing an appeal or post-judgment motions, or, if an appeal is taken, upon the appeal being affirmed and either the expiration of the time for filing motions for rehearing or a denial of the motions for rehearing." [emphasis supplied]
Id. at 1175 n. 2.
GHB's contention, with which the trial court apparently agreed, is that the above quoted "for instance" footnote sets forth the only situation(s) in which a "final judgment *761 becomes final," which would exclude the supreme court's actionssuch as its denial of certiorari in the Watkins v. NCNB predicate casefrom the analysis of finality; i.e., all cases would become final at the district court level for limitations period purposes even though review was sought in the supreme court. Nothing in Silvestrone suggests such a result, and the use of "for instance"i.e., "for example" contradicts such an intention on the part of the Florida Supreme Court. Indeed, cases prior to Silvestrone offered up additional examples. For instance, in Wilson v. Clark, 414 So.2d 526, 530 (Fla. 1st DCA 1982), the First District Court of Appeal stated:
"In essence an action continues to have life until there is a final determination on an appeal. [citations omitted] Finality of a determination does not of course occur until time expires to file a rehearing petition and disposition thereof if filed, or until a timely filed petition for review in the Florida Supreme Court is acted upon." [emphasis supplied]
Had the Florida Supreme Court by its "for instance" intended to disapprove all other examples, it would have disapproved Wilson which it did not do. Under this example in Wilson, Watkins' legal malpractice suit is not barred by the limitation statute because Watkins sought review by the Florida Supreme Court, thus the limitations period began running on January 14, 1994, and had not expired by January 12, 1996, the date this malpractice action was filed.
Following Wilson v. Clark, this court stated in Chapman v. Garcia, 463 So.2d 528, 529 (Fla. 3d DCA 1985):
"Moreover, the trial court's determination that the claim against the Fund is time-barred has been appealed, and until this court issues its decisionor until the Florida Supreme Court resolves the issue if further review is soughtthe question has not been resolved to finality. See Wilson v. Clark, 414 So.2d 526 (Fla. 1st DCA 1982)(on timely appeal by the defendant from an adverse judgment the action continues to have life)." [emphasis supplied]
In Silvestrone, the Florida Supreme Court cited Chapman, with approval:
"[R]edressable harm is not established until final judgment is rendered, see Chapman v. Garcia, 463 So.2d 528, 529 (Fla. 3d DCA 1985)(holding that plaintiffs could not sue attorneys for legal malpractice so long as underlying medical malpractice action, out of which legal malpractice claim arose, was still pending on appeal)."[[4]]
721 So.2d at 1175.
Thus under Chapman this action by Watkins was timely filed.
If we accepted GHB's contention, "finality" would occur in all cases at the district court level even though such a result flies in the face of reality. Obviously, the Florida Supreme Court on a galaxy of occasions has beenas in the Watkins v. NCNB casethe entity which had the final say and thus administered finality to the final judgment. E.g., Henderson v. State, 698 So.2d 1205 (Fla.1997).
GHB also makes a policy argument of sorts, apparently based on its belief that the Florida Supreme Court's jurisdiction is so severely limited that public policy, in some fashion, would be better served by pretending (for that is what GHB would *762 have us do) that finality arrives in the district court in all events. But the supreme court's jurisdiction is extensive, and not severely limited. It includes not only its direct appeal jurisdiction (death sentence orders, district court decisions declaring a state statute invalid, etc.) but its discretionary jurisdiction, the vastness of which has been set out by the Florida Supreme Court itself in The Florida Star v. B.J.F., 530 So.2d 286, 288 (Fla.1988):
"This Court in the broadest sense has subject-matter jurisdiction under article V, section 3(b)(3) of the Florida Constitution, over any decision of a district court that expressly addresses a question of law within the four corners of the opinion itself. [footnote omitted] That is, the opinion must contain a statement or citation effectively establishing a point of law upon which the decision rests....
We premise our holding on our conclusion that article V, Section 3(b)(3) creates and defines two separate concepts. The first is a general grant of discretionary subject-matter jurisdiction, and the second is a constitutional command as to how the discretion itself may be exercised. In effect, the second is a limiting principle dictated to this Court by the people of Florida. While our subject-matter jurisdiction in conflict cases necessarily is very broad, our discretion to exercise it is more narrowly circumscribed by what the people have commanded....
. . . .
... [I]t is not necessary that conflict actually exist for this Court to possess subject-matter jurisdiction, only that there be some statement or citation in the opinion that hypothetically could create conflict if there were another opinion reaching a contrary result. This is the only reasonable interpretation of this constitutional provision. As the final authority on the meaning of the Florida Constitution, see Art. IV, § 1(c), and Art. V, § 3(b)(1), Fla. Const., this Court has the final and inherent power to determine what constitutes express and direct conflict. No other authority exists, except the people pursuant to their power to amend the constitution, that may nullify this Court's pronouncements on that question."
Thus, it is seen that the jurisdiction of the Florida Supreme Court is far more extensive than GHB would have us believe. If we were to accept GHB's argument, we would face a number of questions that would be counter to the bright line intended by Silvestrone: what happens to the running of the limitations period urged by GHB if the supreme court exercises its discretionary jurisdiction? Is it automatically abated? And if the supreme court a year later decides that it had exercised its discretion improvidently and denies or dismisses the petition that had sought the discretionary review, does the period start running again from that date a year later? Or is that past year now counted as part of the limitation period?
These conundrums can best be avoided by basing the result on the reality that a final judgment is not final until a timely filed appeal to, or petition for review by, the supreme court is resolved. In The Florida Star v. B.J.F., the supreme court put a lid on the can of worms GHB attempts to open:
"We thus conclude that we had complete subject-matter jurisdiction to hear B.J.F. and decide the case on its merits with finality. This jurisdiction must be regarded as complete until the time the petition for review is denied. Moreover, the denial of review in B.J.F. did not operate to deprive this Court of its subject-matter jurisdiction retroactively, but merely constituted the point in time at which jurisdiction, for whatever reason, had ended." [emphasis supplied]
530 So.2d at 289.
Watkins v. NCNB became final in the supreme court and thus the instant case is not time barred by section 95.11(4)(a), Florida Statutes (1997).
*763 In light of the recent nature of Silvestrone and the rapid dispute over the bright line rule we certify the following question to the Florida Supreme Court:

WHERE REVIEW OF A DISTRICT COURT DECISION IN AN ACTION UNDERLYING A LEGAL MALPRACTICE CLAIM IS SOUGHT IN THE FLORIDA SUPREME COURT, DOES THE TWO-YEAR STATUTE OF LIMITATIONS PERIOD OF SECTION 95.11(4)(a), FLORIDA STATUTES, BEGIN TO RUN FROM THE DATE THE DECISION BECOMES FINAL BY THE SUPREME COURT'S RESOLUTION OF THAT REVIEW, OR DOES THE PERIOD RUN FROM THE DATE OF THE DISTRICT COURT'S MANDATE?
Reversed and remanded for further proceedings.
SORONDO, J. (concurring).
I agree with Judge Fletcher's majority opinion but write separately to briefly discuss two additional thoughts on the issue before the Court.
The statute of limitations is an onerous defense which should be limited in its application to those cases where its applicability is unavoidable. See Pezzi v. Brown, 697 So.2d 883, 886 (Fla. 4th DCA 1997)("statutes restricting access to the courts must be narrowly construed in a manner favoring access."); Angrand v. Fox, 552 So.2d 1113, 1116 (Fla. 3d DCA 1989)("it is well established that a limitations defense is not favored, ... and that therefore any substantial doubt on the question should be resolved by choosing the longer rather than the shorter possible statutory period."). This Court has historically emphasized that "Florida policy dictates a strong preference that cases be decided on their merits." City of Miami v. Rivas, 723 So.2d 393, 393 (Fla. 3d DCA 1999); Venero v. Balbuena, 652 So.2d 1271 (Fla. 3d DCA 1995); Cinkat Transp., Inc. v. Maryland Cas. Co., 596 So.2d 746 (Fla. 3d DCA 1992). Where courts have discretion in determining the applicability of a statute of limitations, such discretion should be exercised in favor of affording the Florida Constitution's guarantee of access to courts contained within Article I, Section 21.
This case presents an additional, compelling reason which supports the majority's decision. The plaintiff in the present case is the allegedly aggrieved client in this legal malpractice action. The client was unsuccessful in this Court in the case wherein he now claims his attorneys were negligent at the trial level. His decision to seek review in the Florida Supreme Court, in an effort to review this Court's decision, could only inure to the benefit of those attorneys. Had the client been successful in the Supreme Court, those attorneys might have been off the hook. Exhausting appellate review in legal professional liability cases should be encouraged.
GERSTEN, J. (dissenting).
I respectfully dissent. In my view, precedent and policy considerations require affirmance. The trial court correctly determined that the legal malpractice claim was barred by the two-year statute of limitations, and that the statute began to run from the date the appellate court mandate issued. The trial court's ruling was both logical and in conformance with law.
At the outset, I emphasize that this is a statute of limitations case. This case does not involve restricting access to courts and has nothing to do with limiting the Florida Supreme Court's jurisdiction. Rather, the trial court's well-reasoned decision follows understood policy decisions of the Florida legislature as interpreted by the Florida Supreme Court regarding statute of limitations issues.
The Florida Supreme Court specifically stated in the 1998 Silvestrone case that a bright-line rule is required for certainty and finality. See Silvestrone v. Edell, 721 So.2d 1173, 1175 (Fla.1998). In defining finality, the Court did not include *764 discretionary petitions for certiorari. The decision to exclude discretionary petitions indicates the Supreme Court's intent to delineate the boundaries of finality, and to prevent extending the limitation period for an indefinite amount of time.
Moreover, contrary to the majority opinion, just because the Florida Supreme Court did not specifically disapprove of one phrase in the Chapman v. Garcia, 463 So.2d 528 (Fla. 3d DCA 1985) opinion, does not mean automatic adoption of the proposition therein. This becomes more evident in light of subsequent case law and Silvestrone's specific definition of statute of limitations finality. I believe we would be setting a dangerous precedent suggesting that when a case is cited in an appellate decision, all propositions and dicta contained in that case are implicitly accepted and adopted. I do not believe this is or should be reality.
In order to completely explain and analyze the trial court's decision, a recitation of the facts and a more detailed analysis follows: As noted by the majority, the present malpractice action arises out of a lawsuit brought by NCNB National Bank of Florida ("NCNB") against Floyd Watkins ("Watkins"). Watkins hired the appellees Gilbride, Heller & Brown, P.A., Lawrence Heller and Timothy Henkel (collectively referred to as the "law firm") to defend him in that case, and to file a counterclaim for damages. Watkins lost in the NCNB litigation, and the law firm appealed the case on behalf of Watkins to this Court.
This Court affirmed the NCNB decision below, and denied Watkins' subsequent request for rehearing on September 21, 1993. See Watkins v. NCNB Nat'l Bank of Florida, N.A., 622 So.2d 1063 (Fla. 3d DCA 1993). Watkins then hired a new attorney who filed a petition for certiorari to the Florida Supreme Court. The Florida Supreme Court denied the petition for certiorari on January 14, 1994. See Watkins v. NCNB Nat'l Bank of Florida, N.A., 634 So.2d 629 (Fla.1994).
Almost 2 years later, on January 12, 1996, Watkins filed the malpractice claim against the law firm that is the subject of this appeal. The trial court granted summary judgment in favor of the law firm, finding the two-year statute of limitations period expired on September 21, 1995, and therefore the claim was barred. I agree.
Section 95.11(4)(a), Florida Statutes (1997), provides that the statute of limitations for professional malpractice is two years, "commencing from the time the cause of action is discovered or should have been discovered with the exercise of due diligence."[5] In Silvestrone v. Edell, 721 So.2d at 1175, the Florida Supreme Court construed this language concerning litigation-related malpractice and held that the two-year statute of limitations provision under Section 95.11(4)(a) begins to run when "a final judgment becomes final." The Court stated its intent to create a "bright line rule," and further explained what constitutes a final judgment by stating:
To be specific, we hold that the statute of limitations does not commence to run until the final judgment becomes final.2
2/ For instance, a judgment becomes final either upon the expiration of the time for filing an appeal or postjudgment motions, or, if an appeal is taken, upon the appeal being affirmed and either the expiration of the time for filing motions for rehearing or a denial of the motions for rehearing.
Silvestrone v. Edell, 721 So.2d at 1175 & n. 2 (emphasis added).
*765 Recognizing the need to "provide certainty and reduce litigation over when the statute of limitation starts to run," the court specifically stated that a final judgment becomes "final" under circumstances where an appeal is filed, after the expiration of the time for filing motions for rehearing, or the denial of any motions for rehearing. Silvestrone v. Edell, 721 So.2d at 1175 & n. 2
Applying this "bright line rule" to the present case, it is clear that the final judgment entered against Watkins on his counterclaim against NCNB became final on September 21, 1993, once this Court issued its mandate affirming the judgment below.[6] Because Watkins was not entitled as a matter of right to any further appellate remedies, his subsequent filing of a discretionary writ of certiorari to the Florida Supreme Court did not affect the finality of the judgment established at the time the appellate court mandate issued.[7]
Certainty and finality are the underlying reason and spirit behind our statutes of limitations. Certainty and finality are also the cornerstones of this opinion, and are the factors that help control and guide judges, lawyers, and litigants. To hang the concept of finality upon the hook of possible further relief through discretionary review, is to hang hope upon gossamer... an unwise effort which becomes both uncertain and endless.[8]
Simply, a final judgment becomes "final" when appellate remedies to which a party is entitled to as a matter of right have all been exhausted. Here, the statute of limitations on Watkins' malpractice claim began to run on the date the appellate court mandate issued and thus I would find the trial court correctly determined the claim was time-barred. See Silvestrone v. Edell, 721 So.2d 1173, 1175 (Fla.1998). In my view, this approach provides certainty, prejudices no one, and is in accord with established precedent and policy. I would affirm.
NOTES
[1] Section 95.11(4)(a), Florida Statutes (1997), provides in pertinent part:

"Actions other than for recovery of real property shall be commenced as follows:
. . . .
(4) WITHIN TWO YEARS.
(a) An action for professional malpractice... whether founded on contract or tort; provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence."
[2] Or, as stated by twentieth century philosopher Yogi Berra, "It ain't over till it's over."
[3] "Instance" is defined as an "example." The American Heritage Dictionary of the English Language 680 (1979). "For instance" is to offer an example.
[4] In a wondrous display of sophistry, at oral argument GHB contended that the above-quoted language from Silvestrone was actually a disapproval of Chapman because the supreme court omittedin the parenthetical clausementioning Chapman's unequivocal statement that finality is not achieved "until the Florida Supreme Court resolves the issue if further review is sought." Chapman at 529. We seriously doubt that the supreme courthad it intended its "for instance" to be the sole method of finalitywould have missed the opportunity to deconstruct Chapman's language. Indeed, as Chapman specifically cited Wilson v. Clark, this was a second opportunity for the supreme court to drive Wilson into obscurity. This it obviously did not do.
[5] Section 95.11(4)(a), Florida Statutes (1997), provides in pertinent part:

Actions other than for recovery of real property shall be commenced as follows:
. . . .
(4) WITHIN TWO YEARS.
(a) An action for professional malpractice... whether founded on contract or tort; provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence.
[6] When a mandate is issued in a civil case, nothing remains to be done in the lower tribunal other than to comply with that mandate. See Bass v. State Farm Life Ins. Co., 649 So.2d 924 (Fla. 3d DCA 1995). The issuance of a mandate affirming a judgment entitles the holder of the judgment to immediate enforcement remedies as a matter of right. See Robbins v. Pfeiffer, 407 So.2d 1016 (Fla. 3d DCA 1981).
[7] The Florida Supreme Court has the constitutional authority to review decisions of the district courts of appeal in civil cases only in very limited circumstances. Fla. Const. art V, § 3(b). Even where such jurisdiction does exist, its exercise by the Florida Supreme Court in any particular case is purely a matter of discretion on the part of the court, and not a matter of right on the part of the petitioner. Fla. Const. art V, § 3(b)(3) & 3(b)(4).
[8] After all, a litigant could potentially seek further review in the federal judicial system. And from there, perhaps the Hague? It is a fundamental fact that an effective judicial system rests upon finality. As a policy matter, we should not elevate a privilege to seek discretionary review, over a party's right to finality and certainty.