944 So.2d 172 (2006)
AMERICAN WALL SYSTEMS, INC., etc., Petitioner,
v.
MADISON INTERNATIONAL GROUP, INC., etc., et al., Respondents.
No. SC05-868.
Supreme Court of Florida.
October 5, 2006.
Rehearing Denied November 29, 2006.
Loreen I. Kreizinger and Justine S. Anagnos of Loreen I. Kreizinger, P.A., Fort Lauderdale, FL, for Petitioners.
W. Bruce Del Valle of Del Valle Law Group, P.A., Kissimmee, FL, Stephen C. Chumbris and Gerald D. Davis of Holland and Knight, LLP, St. Petersburg, FL, for Respondents.
PER CURIAM.
We have for review American Wall Systems, Inc. v. Madison International Group, Inc., 898 So.2d 111 (Fla. 5th DCA 2005), which expressly and directly conflicts with this Court's decision in Wilson v. Salamon, 923 So.2d 363 (Fla.2005). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
This Court entered an order accepting jurisdiction and granting review of the district court's decision on November 30, 2005, after the petitioner sought review claiming that the decision conflicted with *173 other district court decisions. While the petition for review was pending this Court issued its decision in Wilson, which is now final. In Wilson we expressly receded from our prior decision in Gulf Appliance Distributors, Inc. v. Long, 53 So.2d 706 (Fla.1951), a decision expressly relied upon by the district court in American Wall as authority for affirming a trial court order dismissing the petitioner's action for failure to prosecute. Because we have receded from Gulf Appliance, we conclude that the district court decision should be quashed.
By our order of November 30, 2005, we have determined that we have jurisdiction although we did not expressly set out the basis for jurisdiction in the order. Having already accepted jurisdiction, we further determine that it would be inappropriate to discharge jurisdiction for the additional reason that the case was pending review in this Court when we decided Wilson.
On the authority of our decision in Wilson, the decision under review is quashed, and this matter is remanded to the Fifth District Court of Appeal for reconsideration upon application of this Court's decision in Wilson.
It is so ordered.
LEWIS, C.J., and ANSTEAD, PARIENTE and QUINCE, JJ., concur.
CANTERO, J., dissents with an opinion, in which WELLS and BELL, JJ., concur.
BELL, J., dissents with an opinion.
CANTERO, J., dissenting.
When this case was filed here, we did not have jurisdiction to review it. Although the petitioner's jurisdictional brief alleged conflict with several cases, none of them actually conflicted with the decision belowas the majority apparently concedes. Undaunted by such lack of jurisdiction, however, we retained the case for several months, anticipating a possible eventual conflict with a case not yet decided: our then-forthcoming decision in Wilson v. Salamon, 923 So.2d 363 (Fla.2005). Finally, more than half a year after the petition was filed, we granted review based on the newly created conflict with Wilson. See Am. Wall Sys., Inc. v. Madison Int'l Group, Inc., 917 So.2d 191 (Fla.2005) (granting review).
I object to this manipulative method of asserting jurisdiction. I would discharge review as improvidently granted. Even if we technically have the power to hold cases until we acquire jurisdiction  which I doubt  for reasons of judicial efficiency and fundamental fairness we should not exercise it. Not only does such a process leave the parties in jurisdictional limbo while we decide the soon-to-be-conflicting case, and not only does it reward otherwise-meritless jurisdictional arguments, but it also fails to show proper respect to the constitutional role of the district courts. The fairer approach is simply to determine our jurisdiction based on the conflicts alleged by the petitioner, or at most based on cases already decided at the time we consider our jurisdiction.
In the analysis that follows, I discuss (I) whether we have the constitutional authority to hold cases in anticipation of future conflict, and (II) if so, whether we should exercise that authority.

I. Do We Have Constitutional Authority?
The Florida Constitution speaks of conflict jurisdiction in the present tense. We have discretion to "review any decision of a district court of appeal . . . that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law." Art. V, § 3(b)(3), Fla. Const. (emphasis added). Under the plain meaning *174 of this provision, we cannot review a district court's ruling merely because it will conflict with a future case; it must be one that presently "conflicts" with existing caselaw. As we said many years ago, the conflict must be "real, live and vital." Nielsen v. City of Sarasota, 117 So.2d 731, 735 (Fla.1960) (emphasis added).
The question here is what counts as a "live" conflict. One could argue that the conflict must exist at the time of the district court's decision. We have never construed our jurisdiction so strictly, and I do not argue for such an interpretation now. Implicit in our constitutional authority to review conflicts is the power to hold cases at least long enough to determine whether a conflict actually exists. Without this power, our jurisdiction would be meaningless. See Florida Star v. B.J.F., 530 So.2d 286, 288 (Fla.1988) (concluding that our "final and inherent power to determine what constitutes express and direct conflict" gives us subject-matter jurisdiction to consider petitions for review in any case that "hypothetically could create conflict"). If a conflict arises after the district court's decision but before we consider the parties' jurisdictional briefs, we need not ignore it. To the contrary, we have a constitutional duty to resolve the jurisprudential confusion.
We cannot, however, hold cases indefinitely. As a former chief justice of this Court explained after the 1980 jurisdictional amendments, there is only a "small area" in which a district court's decision can "become in direct conflict with a supreme court decision rendered after the district court has ruled." Arthur J. England, Jr., et al., Constitutional Jurisdiction of the Supreme Court of Florida: 1980 Reform, 32 U. Fla. L.Rev. 147, 190 (1980) (emphasis omitted). It must happen "either during the time available to seek supreme court review . . . or before the supreme court acts on a petition for review otherwise properly filed (so that a notice of additional authority could be filed)." Id. Once we conclude that no conflict exists, our duty changes: it is now to deny review. No constitutional justification remains for retaining the case. Even if we anticipate that a conflict might develop because of a case pending in our Court, we lack authority to control the case in the present. We cannot get from here to there.
A recent example may illustrate this point. Last year, in Goldberg v. Florida Power & Light Co., 899 So.2d 1105 (Fla.2005), we resolved a conflict with Martinez v. Florida Power & Light Co., 863 So.2d 1204 (Fla.2003), released a month after the petition in Goldberg was filed. The petitioner promptly filed a notice of supplemental authority. As a result, we did not need to hold the case in anticipation of a future conflict. By the time we considered whether to grant review, a conflict already existed.[1]
Shortly after Goldberg, we considered Levy v. Florida Power & Light Co., 798 So.2d 778 (Fla. 4th DCA 2001), which involved a similar issue. Levy had been stayed for two years pending our decisions in Martinez and Clay Electric Cooperative, Inc. v. Johnson, 873 So.2d 1182 (Fla.2003). Even after those decisions were released, *175 however, the district court's decision in Levy apparently still did not conflict with any of our decisions. Therefore, we held the case for two more years until Goldberg was decided. I opposed this wait-and-see method of determining jurisdiction and voted to deny review, which we ultimately did. See Levy v. Fla. Power & Light Co., 902 So.2d 790 (Fla.2005) (denying review). Had we granted review in Levy, as we are doing here, we would have done so based on a conflict that developed four years after the district court's decision. There is no logical distinction between this case and that one.
While I acknowledge that we have implicit authority under the Florida Constitution to hold cases until we have evaluated the jurisdictional briefs  and if a conflict arises in the interim, to base our jurisdiction on it  I question whether the constitution empowers us to continue holding cases over which we lack jurisdiction merely because we anticipate a future conflict, as happened in Levy and again in this case. Although we have never drawn such a distinction, our past practice is generally consistent with it.[2]

II. Should We Exercise Our Jurisdiction?
Even if we have the authority to hold cases indefinitely in anticipation of a future conflict, we should not exercise it. Such a process is unwise and unfair for three reasons.
First, such a process leaves the parties in jurisdictional limbo for an indefinite period while we decide the anticipated conflict case. Depending on how long that takes, the parties could wait for months, or even years (as they did in Levy), only to be informed that we did not have jurisdiction. While some petitioners, unhappy with the result below, might accept such a delay, it will often unfairly prejudice the respondent, who should not have to wait years to reap the benefits of a decision that we never had jurisdiction to review.
Second, holding cases in anticipation of a future conflict will create perverse incentives for parties to file meritless petitions for review. The reason is simple. We have no power to reach out and grab district court decisions that we expect will conflict with our future decisions. Instead, the parties must request our review. Because the parties have no way of knowing what our future decisions will say, they cannot rely on anticipatory conflict in petitioning for review. Rather, they must identify some other plausible basis for jurisdiction. In this case, for example, the petitioner alleged conflict with various other cases, none of which conflicted with the district court's decision. Thus, whenever we grant review based on a future conflict, we effectively reward the filing of a meritless petition. After all, if not for the petition, we never could have held the case in the first place. The result is to encourage tenuous petitions for review and, even worse, to penalize conscientious attorneys who have the good judgment to recognize when they do not have a legitimate basis for seeking review in this Court.
Finally, the very concept of anticipatory conflict demeans the role of the district courts in our constitutional system. Under the Florida Constitution, "we are not permitted the judicial luxury of upsetting" a district court's decision "merely because we might personally disagree with the so-called *176 `justice of the case.'" Nielsen, 117 So.2d at 734. Rather, the constitution limits our jurisdiction "in order to sanctify the decisions of the Courts of Appeal with an aspect of finality, so essential to prevent any imbalance in the several echelons of the appellate process." Id. Like it or not, we must permit some district court decisions to become final even though we disagree with them. Of course, we may have an opportunity to apply our views in a future case, after which the district courts would be bound to follow our lead. But as we have acknowledged, "[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court." Stanfill v. State, 384 So.2d 141, 143 (Fla.1980) (emphasis added). Anticipatory conflict contradicts these principles. Far from "sanctify[ing] the decisions of the Courts of Appeal with an aspect of finality," it assumes that the district court's opinion is wrong and should be denied finality merely because we expect to announce a contrary opinion in the future. Its purpose is not to resolve conflict in Florida law  we have already resolved the conflict  but rather to prevent what we perceive as a single unjust ruling. The people of Florida have not charged us with that narrower responsibility. We should resist the temptation to undertake it, even if we can find a pretext for doing so.

III. Conclusion
For these reasons, I would discharge review as improvidently granted. I respectfully dissent from the majority's decision to review and quash the decision below.
WELLS and BELL, JJ., concur.
BELL, J., dissenting.
I dissent for the reasons set forth in my separate opinion in Wilson v. Salamon, 923 So.2d 363, 370 (Fla.2005) (Bell, J., concurring in part and dissenting in part).
NOTES
[1] I also note that the district court's opinion in Goldberg cited Martinez v. Florida Power & Light Co., 785 So.2d 1251 (Fla. 3d DCA 2001), and mentioned that the case was pending in this Court. Thus, we had independent jurisdiction to review the case under Jollie v. State, 405 So.2d 418, 420 (Fla.1981) (holding that a district court opinion "which cites as controlling authority a decision that is either pending review in or has been reversed by this Court continues to constitute prima facie express conflict and allows this Court to exercise its jurisdiction").
[2] When we have based our jurisdiction on conflict with a subsequent decision of ours, it has almost always been based on our Jollie jurisdiction. The district court expressly cited a decision under review in this Court. See, e.g., Mills v. State, 880 So.2d 616 (Fla.2004); State Farm Fire & Cas. Co. v. Levine, 837 So.2d 363 (Fla.2002); Bornemann v. Ure, 826 So.2d 255 (Fla.2002).