790 So.2d 1144 (2001)
Delores JOHNSON and American National Bank of Florida as Personal Representative of the Estate of Dante Antoine Johnson, deceased, Appellants,
v.
LANCE, INC., a North Carolina Corporation, Larry Julian Ganas, and Clay Electric Cooperative, Inc., a Florida Corporation, Appellees.
No. 1D00-1850.
District Court of Appeal of Florida, First District.
July 9, 2001.
Rehearing Denied August 14, 2001.
*1145 Stephen J. Pajcic, III, and Thomas F. Slater of Pajcic & Pajcic, P.A., Jacksonville, for Appellants.
William T. Stone of Cole, Stone, Stoudemire, Morgan & Dore, P.A., Jacksonville, for Appellees.
ALLEN, C.J.
In this negligence action, the appellants challenge a final summary judgment entered in favor of appellee/defendant Clay Electric Cooperative, Inc. (Clay Electric). Because we conclude that Clay Electric owed a legal duty to the appellants' decedent, we reverse.
At this stage of the litigation, the material facts must be viewed in the light most favorable to the appellants. In the early morning darkness of September 4, 1997, a panel truck owned by Lance, Inc., and driven by Larry Ganas, struck a fourteen-year-old boy walking to his school bus stop. The boy, Dante Johnson, had been walking on or near the edge of the roadway. Due to a nonfunctioning light suspended over the roadside, Ganas was unable to see Dante until it was too late to avoid striking him with the truck. Dante died of his injuries later that morning.
The appellants filed suit against Lance, Inc., Larry Ganas, and Clay Electric. They alleged that Clay Electric had failed to provide, maintain, or inspect the light, as required by its contract with either the Jacksonville Electric Authority (JEA) or the City of Jacksonville. Clay Electric subsequently moved for summary judgment, asserting that it had not breached any legal duty it owed to pedestrians. Following a hearing, the trial judge entered an order in which he observed that there was evidentiary support for the following facts: 1) the JEA installed the lights along the roadway several years prior to the accident; 2) the lights were typical of lights located along streets and highways throughout the Jacksonville area; 3) Clay Electric contracted with the JEA to maintain these lights; 4) the contract was in force and Clay Electric had been paid for its maintenance at the time of the accident; 5) if the lights had been properly maintained, Ganas would have seen the decedent in time to avoid the collision; and 6) the light nearest the accident was not illuminated and had not been illuminated for several years prior to the collision because Clay Electric failed to properly maintain the light and never instituted a system to determine which lights needed replacement bulbs or repairs. Nonetheless, citing Arenado v. Florida Power & Light Co., 523 So.2d 628 (Fla. 4th DCA 1988), review dismissed, 541 So.2d 612 (Fla.1989), the judge concluded that Clay Electric had no legally recognized duty to maintain these lights for the benefit of the decedent. The trial judge therefore granted final summary judgment in favor of Clay Electric.
The issue for our decision is whether the trial judge properly concluded that Clay Electric owed no legal duty to pedestrians such as Dante Johnson to maintain the lights along the roadway. We first observe that Arenado involves a theory of recovery that is clearly distinguishable from the plaintiffs' theory in the present case. In Arenado, the personal representative *1146 of a deceased driver alleged that Florida Power & Light had negligently interrupted the flow of its electricity to a traffic light, and was thus liable for the fatal collision that occurred as a result. The Fourth District concluded that the utility did not owe a legal duty in these circumstances to the non-customer plaintiff. Like Arenado, the present case involves a contract between a utility and a governmental entity, but the contract in the present case is not for the provision of electricity to a governmental improvement. The contract is instead for the maintenance of a governmental improvement.
This is a crucial distinction because a governmental entity in Florida owes a legal duty to the motoring public to maintain the traffic lights and stop signs that it undertakes to provide. See Department of Transportation v. Neilson, 419 So.2d 1071 (Fla.1982); Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla.1979); Clark v. Polk County, 753 So.2d 138 (Fla. 2d DCA 2000); Armas v. Metropolitan Dade County, 429 So.2d 59 (Fla. 3d DCA 1983); Wallace v. Nationwide Mutual Fire Insurance Co., 376 So.2d 39 (Fla. 4th DCA 1979). And this principle logically extends to the present case. If a governmental entity has a duty to maintain traffic lights and stop signs it has erected for the safety of motorists, it also has a duty to maintain other improvements it has erected for the safety of other members of the public.
Viewing the evidence in the present case most favorably to the plaintiffs, the lights installed by the governmental entity were "streetlights." Pursuant to a common-sense understanding of that term, the lights were provided, at least in part, for the benefit and safety of pedestrians walking along the roadway. The governmental entity therefore had a duty to exercise reasonable care in the maintenance of the streetlights for the protection of such pedestrians. Clay Electric's subsequent undertaking in accordance with its contract to maintain the streetlights therefore gave rise to Clay Electric's duty to these pedestrians to exercise reasonable care in this undertaking.
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
Restatement (Second) of Torts, § 324A (1965) (emphasis added). Evidence before the trial judge indicated that Clay Electric had maintained some of the lights along this roadway in the past, thereby undertaking the performance required by its contract. And Clay Electric could reasonably foresee that pedestrians walking along the roadway would be in danger of physical harm as a result of its failure to maintain the streetlights. Clay Electric therefore owed a legal duty to Dante Johnson to maintain the lights for his protection.
The final summary judgment is reversed, and this case is remanded.
VAN NORTWICK, J., CONCURS; POLSTON, J., CONCURS WITH OPINION.
*1147 POLSTON, J., concurring.
On September 4, 1997, Dante Johnson, a student, was walking to his bus stop before sunrise along the side of Collins Road in Jacksonville, Florida, when he was struck by a truck. Tragically, the young boy died from his injuries. The plaintiffs brought suit, alleging that an employee of Lance, Inc., Mr. Larry Ganas, negligently drove the truck that struck Dante Johnson, causing his death. The plaintiffs also brought a negligence claim against Clay Electric, Inc., alleging that Clay Electric had a contractual obligation to maintain the street lights in the vicinity of the accident and had negligently failed to perform this duty, so that one or more lights in the vicinity of the accident were inoperable when the accident occurred.
The trial court granted Clay Electric's motion for summary judgment, ruling:
(D) Several years before the subject collision, the Jacksonville Electric Authority had installed lights along the street where the decedent was struck and killed. These lights are typical of lights located along streets and highways throughout the Jacksonville area. Also, several years before the subject collision, Defendant Clay Electric entered into a contract with the Jacksonville Electric Authority which required that Defendant Clay Electric maintain the lights. That contract remained in force at the time of the collision and Defendant Clay Electric had been paid to maintain the lights.
(E) If the lights had been operating properly, Defendant Ganas would have seen the decedent in time to avoid the collision. The light nearest the site of the collision was not illuminated and it had not been illuminated for several years prior to the collision. Defendant Clay Electric, although being contractually obligated to maintain the light and having been paid to do so, failed to maintain the light. Defendant Clay Electric never instituted a system to regularly inspect the lights at night to determine which lights needed replacement bulbs or repairs.
(F) The Court, having read the cases cited by the parties, concludes the Defendant Clay Electric did not have a legally recognized obligation to maintain the subject light for the benefit of the decedent. Defendant Clay Electric did not create a risk of injury to the decedent which would give rise to a duty of care as was the case in McCain v. Florida Power Corp., 593 So.2d 500 (Fla. 1992). The Court in Arenado v. Florida Power and Light Co., 523 So.2d 628 (Fla. 4th DCA), petition for review dismissed, 541 So.2d 612 (Fla.1989), held that the personal representative of a motorist killed in a motor vehicle accident caused by the negligence of the Defendant power company in failing to maintain electricity to a traffic light could not state a cause of action in negligence due to the absence of a duty owed to the decedent. Arenado v. Florida Power Corp., is more similar factually than any other case cited and requires the conclusion that Clay Electric did not owe the decedent a legally recognized duty of care. (Emphasis added).
Because the trial court's conclusion that Clay Electric did not owe the decedent a legally recognized duty of care is unsupported by the record, I agree that the final summary judgment in favor of Clay Electric should be reversed and remanded for further proceedings.

Legal Duty of Care Arising From Contract
As explained in McCain v. Florida Power Corporation, 593 So.2d 500 (Fla.1992), the determination of whether there is a duty of care is a matter of law and not a *1148 factual question for the jury to decide. This legal duty arises "whenever a human endeavor creates a generalized and foreseeable risk of harming others," and may originate from various sources:
Obviously, the duty can arise from other sources such as statutes or a person's status (e.g., the duty a parent owes a child). The Restatement (Second) of Torts, for example, recognizes four sources of duty: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case. Restatement (Second) of Torts, Sec. 285 (1965).
Id. at 503 & n. 2.
In Florida Power & Light Co. v. Periera, 705 So.2d 1359, 1361-62 (Fla.1998), the Court further instructs:
[T]he proper way of determining whether a duty existed is to decide whether the defendant's actions created a foreseeable zone of risk, not by whether the specific injury suffered was foreseeable by the defendant....
Once it is established that a duty does exist, only then does the question of proximate cause become relevant. Foreseeability, as it relates to the proximate cause, generally is a question of fact left for the factfinder. In this context, the focus is on specific, narrow facts of the case, not the broader zone of risk that the defendant created. [citations omitted].
In this case, Plaintiffs allege that Clay Electric's legal duty arises from its contract with "either the City of Jacksonville and/or the Jacksonville Electric Authority" to provide and maintain street lighting where the accident occurred.[1] Although the trial court ruled that there is a contract between Clay Electric and Jacksonville Electric Authority ("JEA"), there is no contract in the record or any other evidence indicating the terms of such a contract, including the rights and obligations of the parties. The corporate representative for JEA testified that he was unaware of any contract between JEA and Clay Electric.
In Arenado v. Florida Power & Light Company, 541 So.2d 612 (Fla.1989), the Court dismissed the petition for review of Arenado v. Florida Power & Light Company, 523 So.2d 628 (Fla. 4th DCA 1988), explaining that there is no conflict between Arenado and the two Waterworks cases, Mugge v. Tampa Waterworks Co., 52 Fla. 371, 42 So. 81 (Fla.1906) and Woodbury v. Tampa Waterworks Co., 57 Fla. 243, 49 So. 556 (1909). The Court discussed the Waterworks cases, particularly the negligence claims arising from the contractual provisions between Tampa Waterworks and the City of Tampa for the construction and operation of the city's waterworks. 541 So.2d at 612. The Court stated:
We now agree that [the Waterworks cases] were predicated upon special language in the Tampa Waterworks' contracts which does not exist here [in Arenado]. "[T]he contract of the water company is the measure of its duty to the property owner." Mugge, 52 Fla. at 388, 42 So. at 86.
Id. at 614 (emphasis added). Likewise, the contract of Clay Electric is the measure of its duty to Plaintiffs.
Because I do not know what the contractual terms are that Clay Electric allegedly has with either JEA or the City of Jacksonville, I cannot yet determine as a matter of law what the measure of Clay Electric's duty is to the Plaintiffs, if any. See Juno Industries, Inc. v. Heery International, *1149 646 So.2d 818, 826 (Fla. 5th DCA 1994)(court reviewed contractual provisions of various defendants, who were sued for negligence, to determine extent of duty; movant's summary judgment was reversed because its contractual obligations were not in the record); Smalley Transportation Co. v. Marks, Gray, Conroy & Gibbs, 649 So.2d 257, 259-60 (Fla. 1st DCA 1994)(summary judgment reversed where movant failed to establish terms of contract in record); Rabon v. Inn of Lake City, Inc., 693 So.2d 1126, 1127-28 (Fla. 1st DCA 1997)(summary judgment reversed because no record evidence of contractual obligation); Rollins, Inc. v. Heller, 454 So.2d 580, 583 (Fla. 3d DCA 1984)("It is well settled that exculpatory and limitation of damages provisions are valid and enforceable in these types of contracts"; applying limitation of damages provisions of contract in claim for gross negligence where duty arose from contract).
Because the Plaintiffs allege that the duty by Clay Electric arises from a contractual obligation, which was the basis of the trial court's ruling that we now reverse, I would not address whether there is a duty by Clay Electric arising from the other general facts of the case.
NOTES
[1] This alleged duty, arising from the contract, originates from the general facts of the case. Restatement (Second) of Torts, § 285(4) (1965).