798 So.2d 778 (2001)
Staci LEVY, as Personal Representative of the Estate of Brandon Levy, Appellant,
v.
FLORIDA POWER & LIGHT COMPANY, a Florida corporation, Broward County, a political subdivision of the State of Florida, and City of Coral Springs, a municipal corporation, Appellees.
No. 4D00-3671.
District Court of Appeal of Florida, Fourth District.
September 19, 2001.
Rehearing Denied November 15, 2001.
*779 David H. Nevel of Law Offices of Nevel & Greenfield, Miami, for appellant.
Aimee Stein, FP & L-Law Department, Miami, and Ralph O. Anderson of Hicks, Anderson & Kneale, P.A., Miami, for appellee-Florida Power & Light Company, a Florida corporation.
GROSS, J.
On July 1, 1997, twelve-year-old Brandon Levy was killed while crossing the street with his bicycle at the intersection of Coral Ridge Drive and Lake View Drive. When Brandon approached the intersection with his friend David Lowe, the boys noticed that the traffic light was not working. The traffic light was owned and operated by Broward County Traffic Control. Appellee, Florida Power and Light Company ("FP & L"), supplied the electric power to the light.
David crossed the road first. Brandon hesitated for a minute before entering the intersection.
James Calvert drove his car towards the intersection just as the boys began to cross the road. Calvert did not notice that the traffic light was malfunctioning and did not slow down as he approached the intersection. Calvert saw David cross the street on his rollerblades, but his view of Brandon was blocked by another car.
Immediately after Calvert's passenger yelled "bike, bike," Calvert's car hit Brandon, who flew onto the hood of the car and hit his head on the windshield. The blunt trauma to his head caused his death.
Brandon's parents, Staci and Charles Levy, settled with Calvert. As personal representative of Brandon's estate, Staci Levy filed suit against FP & L.
Her second amended complaint stated a cause of action for negligence. The pleading *780 alleged that the interruption of power to the traffic light and its malfunction were caused by "the negligence of FP & L in failing to provide adequate safe-guards against such interruptions of power at busy and dangerous intersections." The complaint alleged that FP & L had notice of the "problems associated with the power supply" to the traffic light and had acted negligently in failing to timely restore power and notify the public and proper authorities.
The trial court granted FP & L's motion for summary judgment. Levy timely appealed.
Two lines of Florida cases compel affirmance.
This court has previously held that a power company does not owe a duty to a noncustomer who was injured in an intersection collision because a traffic signal was rendered inoperative due to the negligence of the power company. See Arenado v. Fla. Power & Light Co., 523 So.2d 628, 629 (Fla. 4th DCA 1988), rev. dismissed, 541 So.2d 612 (Fla.1989). In Arenado, the plaintiff was killed in a collision at an intersection controlled by a traffic signal which was inoperative due to a down transmission line. The plaintiff alleged that the power company's negligence caused the interruption of electric service.
Relying on Justice Cardozo's opinion in H.R. Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 159 N.E. 896 (1928), we held that "the utility had not assumed the duty which is sought to be imposed upon it." Arenado, 523 So.2d at 629. We recognized that tort law involved the public policy decision of whether a defendant should bear a given loss, as opposed to distributing the loss among the general public. See id.
Arenado is consistent with another line of cases holding that an electric company responsible for maintaining streetlights has no common law duty to motorists or pedestrians injured in vehicular accidents caused, at least in part, by inoperative streetlights. See Martinez v. Fla. Power & Light Co., 785 So.2d 1251, 1252 (Fla. 3d DCA 2001); White v. S. Cal. Edison Co., 25 Cal.App.4th 442, 30 Cal. Rptr.2d 431 (1994); Vaughan v. Eastern Edison Co., 48 Mass.App.Ct. 225, 719 N.E.2d 520 (1999); Gin v. Yachanin, 75 Ohio App.3d 802, 600 N.E.2d 836 (1991); Karen L. Ellmore, Annotation, Liability of Electric Utility to Nonpatron for Interruption or Failure of Power, 54 A.L.R.4th 667, § 4 (1987). As the Vaughan court observed:
"Duty is an allocation of risk determined by balancing the foreseeability of harm, in light of all the circumstances, against the burden to be imposed." [White, 25 Cal.App.4th at 447, 30 Cal.Rptr.2d 431.] The capacity to bear or distribute loss is a factor to consider in allocating the risk. See [W. PAGE KEETON, ET AL.,] Prosser & Keeton [ON THE LAW OF] Torts § 4, at 24 [5th ed.1984]. We appreciate that relieving the electric company of liability may leave the "loss on the shoulders of the individual plaintiff, who may be ruined by it." Ibid. "But the imposition of tort liability on those who must render continuous service of this kind to all who apply for it under all kinds of circumstances could [also] be ruinous and the expense of litigation and settling claims over the issue of whether or not there was negligence could be a greater burden to the rate payer than can be socially justified." [PROSSER & KEETON, TORTS § 93, at 671].
Vaughan, 719 N.E.2d at 523-24; see Strauss v. Belle Realty Co., 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985) (holding that a power company is "not answerable" to a tenant injured in common *781 area of an apartment building as a result of power company's negligent failure to provide electric service); but see Johnson v. Lance, Inc., 790 So.2d 1144 (Fla. 1st DCA 2001)[1] (holding electric cooperative with a contract to maintain streetlights owed a legal duty to reasonably maintain the lights for the protection of a pedestrian killed while walking near a non-functioning street light); Long v. District of Columbia, 820 F.2d 409 (D.C.Cir.1987) (holding power company with contractual obligation to repair traffic signals owed duty to members of the traveling public to perform the contractual commitment with reasonable care).
The second line of Florida cases supporting dismissal of the action focuses on the issue of proximate cause. In Metropolitan Dade County v. Colina, 456 So.2d 1233 (Fla. 3d DCA 1984), rev. denied, 464 So.2d 554 (Fla.1985), the plaintiff sued the county for negligence in connection with a collision at an intersection with a malfunctioning traffic light. The third district noted that the two drivers involved in the accident had not complied with section 316.1235, Florida Statutes (1979), which required drivers to treat intersections with malfunctioning traffic lights as if controlled by stop signs. The court held that the drivers's failure to comply with the statute was a superseding, intervening cause relieving the county of liability. Id. at 1235. Policy considerations informed the court's decision on proximate cause:
To hold the county liable on these facts would make it an insurer of motorists acting in disregard of their own safety and that of others. Such a responsibility would be an unwarranted social burden.
Id.; see Metropolitan Dade County v. Tribble, 616 So.2d 59 (Fla. 3d DCA 1993); Wright v. Metropolitan Dade County, 547 So.2d 304 (Fla. 3d DCA 1989); Derrer v. Georgia Elec. Co., 537 So.2d 593 (Fla. 3d DCA 1988).
Adoptie By and Through Adoptie v. Southern Bell Telephone & Telegraph Co., 426 So.2d 1162 (Fla. 3d DCA 1983), was a case where the plaintiff alleged that an inoperable traffic light caused an intersection accident. The allegation was that FP & L or Southern Bell had negligently cut the power line which supplied electricity to the signal. The third district affirmed the dismissal of the complaint "on the ground that [the defendants'] conduct was, as a matter of law, not a legal cause of the plaintiff's damages." Id. at 1163.
Under Adoptie and Colina, Calvert's failure to stop at the intersection was a superseding intervening cause relieving FP & L of any liability. See § 316.1235, Fla. Stat. (2000) (providing that the "driver of a vehicle approaching an intersection in which the traffic lights are inoperative shall stop in the manner indicated" in section 316.123(2), Florida Statutes (2000)).
The decision in this type of case is policy driven. The finding of a legal duty or a jury question here would change an electric utility's conduct when faced with power outages. If appellant's allegations are true, that might be a change for the better. However, imposing liability would shift the cost for many traffic accidents to the utility and, presumably, to the rate payer through increased power rates.
For a number of years, the case law in this state has declined to extend a utility's responsibility in cases like this one. Judicial *782 policy making is not a freewheeling exercise. As Judge Judith Kaye has observed:
If appellate adjudication is not a cold, scientific process of affixing precedents to facts found below, neither is it a free-form exercise in imposing a judge's personal beliefs about what would be a nice result in a particular case. Our government is after all a government of law, and our court is a court of law. Though it must move, the law also must have stability, certainty, and predictability so that people will know how to conduct themselves in order to come within the law, and will know what rights they may reasonably expect will be protected or enforced. An appellate court decision resolves a dispute between litigants, but it also establishes the rule for the future. Stability is essential for fairness and evenhandedness: if certain conduct produces a result in one case, then blind justice should produce the same result for other people in other cases like it. Courts simply cannot decide one way one day and another way the next.
Judith S. Kaye, The Human Dimension in Appellate Judging: A Brief Reflection on a Timeless Concern, 73 Cornell L.Rev. 1004, 1014 (1988). The drastic shift in policy which Levy seeks is more properly made on a statewide basis by the supreme court or by the legislature, the branch of government best suited to weigh and allocate social costs. "[S]elf-restraint by the courts in lawmaking must be their greatest contribution to the democratic society." Kaye, 73 Cornell L.Rev. at 1015 (quoting Breitel, The Lawmakers, 65 Colum. L.Rev. 749, 777 (1965)).
AFFIRMED.
POLEN, C.J., and STONE, J., concur.
NOTES
[1] The first district distinguished its decision in Johnson v. Lance, Inc., 790 So.2d 1144 (Fla. 1st DCA 2001) from Arenado v. Florida Power & Light Co., 523 So.2d 628 (Fla. 4th DCA 1988). Arenado involved a contract between a utility and a governmental entity to provide electricity; Johnson arose from a contract "for the maintenance of a government improvement." Johnson, 790 So.2d at 1146 (emphasis omitted).