DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**REHABILITATION CENTER AT HOLLYWOOD HILLS, LLC,**
Appellant,

v.

**FLORIDA POWER & LIGHT COMPANY** and
**HOLLYWOOD PROPERTY INVESTMENTS, LLC,**
Appellees.

No. 4D19-1786

---

**CHRISTINE COOPER,**
Appellant,

v.

**FLORIDA POWER & LIGHT COMPANY** and
**HOLLYWOOD PROPERTY INVESTMENTS, LLC,**
Appellees.

No. 4D19-1787

[May 20, 2020]

Consolidated appeals from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE17-022161.

Julie W. Allison of Julie W. Allison, P.A., Hollywood, and Dorothy F. Easley of Easley Appellate Practice PLLC, Miami, for appellant Rehabilitation Center at Hollywood Hills, LLC.

Scott P. Schlesinger and Jeffrey L. Haberman of Schlesinger Law Offices, P.A., Fort Lauderdale, and Philip M. Burlington and Adam Richardson of Burlington & Rockenbach, P.A., West Palm Beach, for appellant Christine Cooper.

Eric Hoecker of Florida Power & Light Co., Juno Beach, and Stuart H. Singer and Evan Ezray of Boies Schiller Flexner LLP, Fort Lauderdale, and

Luis Suarez and Mark Heise of Boies Schiller Flexner LLP, Miami, for appellee Florida Power & Light Co.

WARNER, J.

In consolidated cases, Rehabilitation Center of Hollywood Hills, LLC and Christine Cooper, a resident of the Center, appeal the trial court's order of dismissal of Cooper's complaint against Florida Power & Light for negligence and strict liability.[1]  Cooper sued both FPL and the Center, alleging that after Hurricane Irma, FPL's failure to restore power to the Center caused injuries to her.  FPL moved to dismiss, arguing that it did not owe a duty to provide a continuous supply of electricity to the resident of the nursing home, because she was a member of the general public.  FPL also argued that liability was precluded by its tariff provisions with the Public Service Commission.  The trial court granted the motion and dismissed the complaint, agreeing that the tariff precluded liability and that FPL owed no common law duty to the nursing home residents.  We affirm, as we agree with the trial court that FPL owes no common law duty to the general public to provide and maintain electrical service.  Because there is no duty, we do not reach the question of whether the tariff precludes liability.

The sufficiency of a complaint is a matter of law and dismissal of a complaint is reviewable by the de novo standard.  *See Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 734 (Fla. 2002).  In reviewing a motion to dismiss, the appellate court's "gaze is limited to the four corners of the complaint."  *Goodall v. Whispering Woods Ctr., LLC,* 990 So. 2d 695 (Fla. 4th DCA 2008).  We therefore glean the facts from those allegations of the complaint directed at FPL.

Cooper was a resident of the Center, a skilled nursing facility, located in Broward County, Florida, when Hurricane Irma hit South Florida on Sunday, September 10, 2017.  The Center lost power, and the air-

---

[1] The Center argues as a threshold matter that it has standing to bring the appeal because it is a named party and defendant in the proceedings below, and it may be affected by a holding that FPL is not liable.  We agree that the Center has standing.  *See S. Puerto Rico Sugar Co. v. Tem-Cole*, 403 So. 2d 494, 495 (Fla. 4th DCA 1981) (defendant has right to appeal judgment exonerating codefendant where codefendant's exoneration adversely affects defendant's rights such as a right to contribution).  *See also Holton v. H.J. Wilson Co.*, 482 So. 2d 341, 343 (Fla. 1986) (holding defendant has the right to appeal a judgment exonerating a codefendant because the finding of nonliability to plaintiff determines any contribution and/or indemnity claims between alleged tortfeasors).  FPL does not dispute the center's standing on appeal.

conditioning system failed. While it regained some electricity, there was no power for air-conditioning and the Center did not have a generator to power the air-conditioning system. Despite the Center's assurances to appellant's relatives that appellant would receive the proper care, the residents were kept in sweltering conditions.

On Wednesday, September 13th, after three days without power, someone placed a 911 call to report that a resident of the nursing home was in cardiac distress. Emergency personnel responded and discovered dozens of elderly residents suffering in the heat. Many residents had died.

The complaint alleged that FPL bears responsibility as well as the Center, stating, "FPL knew the grave situation that Rehabilitation Center residents were made to endure. Yet FPL failed to repair the power lines in time. FPL's negligent and reckless conduct caused death and serious injuries to Rehabilitation Center residents."

In Count VII of the complaint (the only count against FPL), Cooper alleged that "FP&L[] owed a general duty to the public, including Cooper, to exercise a high degree of care in the operation and maintenance of its power lines and power grid." Cooper alleged that FPL violated its duty in the following respects:

> a. Failure to have the appropriate policies and procedures in place as the sole power company servicing South Florida;
>
> b. Failure to have an appropriate plan in place in the event of a natural disaster;
>
> c. Failure to maintain in proper working order, its powerlines and power grids;
>
> d. Failure to adequately and sufficiently trim trees in advance in order to prepare for the foreseeable hurricane event, resulting in obstructed, downed or damaged power equipment which further [d]elayed the restoration of power;
>
> e. Failure to respond timely to an emergent situation;
>
> f. Failure to make repairs in a timely fashion;
>
> g. Failure to have sufficient personnel;

3

h. Failure to perform routine inspections of its facilities; and

i. Failure to comply with applicable federal and local safety standards.

Cooper alleged no facts to show how these various negligent acts or omissions contributed to the continued loss of power to the air-conditioning system. The complaint alleged that these breaches of duty "were a willful and wanton disregard of the rights of Christine Cooper and constituted outrageous behavior." She claimed damages for bodily injury and emotional distress.

FPL moved to dismiss the complaint on two bases: 1) its Tariff provisions precluded liability, and 2) that FPL does not owe a generalized duty to the public to provide continuous electricity after a hurricane.

As to the duty issue, FPL argued that it owed no duty to Cooper to provide continuous electricity after the hurricane. It was not an insurer of the general public's welfare. Similarly, FPL also claimed that it owed no generalized duty to the public to provide continuous electric service, as it was not an insurer of electricity. Florida case law has not imposed such a duty owed to the general public. Noting that most cases regarding FPL's duty arose from accidents at non-functioning traffic lights due to power outages, FPL characterized Cooper's claim as one to maintain the flow of electricity to the general public.

Cooper opposed the motion to dismiss the complaint, contending that FPL owed a duty to her under the "undertaker doctrine" which requires that any service taken for the benefit of another be performed with reasonable care. In reply, FPL argued that appellant failed to plead an undertaking by FPL as to her and only pleaded a generalized duty.

After a hearing on the motion, the trial court entered an order of dismissal as to FPL. The court ruled that FPL owed no common law duty to the residents of the rehabilitation center, citing numerous cases which hold that power companies do not owe a duty of care to the general public for power outages. Both Cooper and the Center appeal the dismissal.

The existence of a duty of care in a negligence action is a question of law. *See Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1110 (Fla. 2005) (citing *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)). Whether a duty of care exists is to be determined solely by the court. *L.A.*

*Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 557 (Fla. 4th DCA 2008); *Marriott Int'l, Inc. v. Perez-Melendez*, 855 So. 2d 624, 628 (Fla. 5th DCA 2003).

> The principle of "duty" is linked to the concept of foreseeability and may arise from four general sources:
>
> (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case.

*Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 n.2 (Fla.1992). "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *McCain*, 593 So. 2d at 502. It must be an "unreasonable risk" of harm caused by defendant's conduct, however. *Stevens v. Jefferson*, 436 So. 2d 33, 35 (Fla. 1983). And the risk must be created by the defendant's conduct which the defendant thus has the ability to control. *See Surloff v. Regions Bank*, 179 So. 3d 472, 475 (Fla. 4th DCA 2015); *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004).

As the trial court noted, Cooper's complaint alleges that FPL had a general duty to the public to maintain and operate the electric grid so that power is supplied. But in this case, by accepting Cooper's allegation of duty, the "zone of risk" would encompass the entire population of persons and property for which electricity is supplied. We do not think it is foreseeable that the failure to restore electricity poses an "unreasonable" risk of harm to the entire population. We have found no case holding that a utility owes a general duty to the public or noncustomer for a continuous supply of power. Indeed, the few cases which have touched on the issue have all determined that no such duty exists. *See Arenado v. Fla. Power & Light Co.*, 523 So. 2d 628, 629 (Fla. 4th DCA 1988), *rev. dismissed*, 541 So. 2d 612 (Fla. 1989) (holding utility did not assume duty to general public to supply electricity to traffic lights); *Levy v. Fla. Power & Light Co.*, 798 So. 2d 778 (Fla. 4th DCA 2001) (finding utility owed no duty to non-customer to restore power to traffic light before accident and injury occurred), *Strauss v. Belle Realty Co.*, 65 N.Y. 2d 399, 482 N.E. 2d 34, 492 N.Y.S. 2d 555 (1985) (holding utility company owed no duty to non-customer tenant injured in a fall in the common area of apartment building for negligent failure to restore power after a power outage). Such a duty

5

would make a utility an insurer of the supply of electricity.  Even Cooper and the Center concede that FPL is not an insurer of electricity.

Cases finding a duty on the part of the power company to third persons focus on an immediate danger which the power company created by its acts.  In particular, the most common "zone[s] of risk" are the electrified power lines themselves which pose a "greater-than-usual zone of risk associated with the business enterprise they have undertaken [the transmission of electric power]."  *McCain,* 593 So. 2d at 504.  *See also Pacheco v. Fla. Power & Light Co.,* 784 So. 2d 1159, 1162 (Fla. 3d DCA 2001).  Yet even with respect to the danger posed by the power lines themselves, the power company's duty is not unlimited but depends on the knowledge of the risk posed to the specific plaintiff.  *See e.g., Smith v. Fla. Power & Light Co.,* 857 So. 2d 224, 233 (Fla. 2d DCA 2003) ("Not everyone who may be injured by contact with a power line is owed a duty by the power company to provide protection against injury.  A threshold determination must be made that persons in the circumstances of a particular plaintiff were as a matter of law within a foreseeable zone of risk created by the defendant power company.").  These cases do not impose a duty on behalf of the power company to the general public.

In *Goldberg v. Florida Power & Light Co.,* 899 So. 2d 1105, 1114 (Fla. 2005), the court found FPL had a common law duty to repair downed power lines in a non-negligent manner.  There, an electrical wire was down due to weather.  To prevent a "backfeed," FPL turned off the power to a traffic light at a nearby intersection while making repairs.  As a result, an accident occurred in which the Goldbergs' daughter was killed.  The parents sued FPL and alleged that the workers had a duty to warn that they were cutting power to the traffic signal.  The supreme court held that the power company had a duty to warn motorists of a hazardous condition it *created* when it deactivated the traffic signal.  It acknowledged, however, that in a large-scale power outage such as after a hurricane or other act of God, numerous traffic signals may be deactivated rendering it impractical for FPL to implement safety precautions at all affected intersections.  Thus, the court signaled that a power company may not be liable where the power outage was caused by a hurricane or other event beyond the utility's control.  This would be in keeping with *McCain's* explanation that the defendant's conduct must create the zone of risk, which is within its ability to control.  When an event such as a hurricane occurs and interrupts power, there clearly is considerably less ability to control any risk associated with an inability to supply power.

Cooper argues that the undertaker doctrine creates liability for FPL.  The trial court rejected its application and we agree.  In *Clay Electric*

*Cooperative, Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003), the supreme court approved the doctrine: "[w]henever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service—i.e., the 'undertaker'—thereby assumes a duty to act carefully and to not put others at an undue risk of harm." Where a third person is involved, the court adopted the Restatement (Second) of Torts § 324A (1965) for assessing liability:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
>     (a) his failure to exercise reasonable care increases the risk of such harm, or
>
>     (b) he has undertaken to perform a duty owed by the other to the third person, or
>
>     (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The *Clay* court used the doctrine to hold that an electric company which had a contract to maintain streetlights owed a duty of care to a child who was killed while walking on a darkened road to a bus stop. Clay Electric Cooperative had entered into a contract to maintain the streetlights but had failed to inspect for some time or replace the particular lights where the child was hit by an automobile. Based upon the facts and circumstances of the case, the court held that the electric company "assumed *a specific*, legally recognized duty to the plaintiffs to act with due care in maintaining the streetlights." *Id.* (emphasis supplied.) The court ruled that both the "increased risk" and "reliance" subsections of the Restatement were implicated. The maintenance company's failure to exercise due care in maintaining the lights caused the roadway to be dark and increased the risk that a driver would not see the decedent. The child's caretakers could have relied on the fact that the boy's path to the school bus stop would be lighted in permitting him to walk to the bus stop. Thus, the facts established a duty owed by Clay under the doctrine. *See also Dolan v. Fla. Power & Light Co.*, 872 So. 2d 274 (Fla. 4th DCA 2004).

In *Clay*, the company had agreed by contract to provide a specific service – maintenance of streetlights. Similarly, in other cases the undertaking has been narrow and specific, not a general obligation to furnish services. For instance, in *Union Park Memorial Chapel v. Hutt*, 670 So. 2d 64 (Fla. 1996), the court applied the doctrine to find a duty on the part of a funeral home director to act non-negligently when voluntarily leading a funeral procession, during which an accident occurred to one of the participants. We applied the doctrine in *Vendola v. Southern Bell Telephone & Telegraph Co.*, 474 So. 2d 275 (Fla. 4th DCA 1985), to find a duty on the part of Southern Bell when it traced a 911 call negligently, the result of which was that the person making the call bled to death before help could arrive. We said, "[w]hen it undertook the service of tracing these calls, Southern Bell exposed itself to that venerable principle of law that an action undertaken for the benefit of another, even gratuitously, must be performed in accordance with an obligation to exercise reasonable care." *Vendola*, 474 So. 2d at 278. Again, this was a discrete and narrow specific undertaking, not the generalized wide-ranging undertaking of supplying continuous power to the entirety of South Florida. The application of the undertaker doctrine to the facts of this case would make FPL the insurer of power, something the courts have never authorized.

Were we to apply the undertaker doctrine, the complaint does not make sufficient allegations to support it. There must be an undertaking, either voluntary or for consideration. The complaint makes no allegation that FPL had any contractual obligation or that it had agreed to immediately provide power to the air-conditioning units at the Center. It alleges simply that FPL had a general duty to the public to maintain and operate its electric grid. At best, it states that FPL knew of the situation at the Center and failed to restore power in time, yet it does not allege that FPL made any specific agreement to restore power immediately to the Center or in the three days that passed before the discovery of the residents' conditions. Thus the complaint does not allege a narrow and specific undertaking.[2]

Prior to the decision in *Clay*, in *Levy v. Florida Power & Light Co.*, 798 So. 2d 778 (Fla. 4th DCA 2001), Judge Gross discussed the duty of a power company with respect to the foreseeability of harm and quoted from *Vaughan v. Eastern Edison Co.*, 48 Mass. App. Ct. 225, 719 N.E. 2d 520 (1999):

---

[2] The Center suggests that we allow an amendment to the complaint as there may be additional facts which could support an undertaking, but Cooper did not request leave to amend either at the trial level or on appeal. Furthermore, our ruling applies to a non-customer. Other considerations would affect FPL's liability to a customer.

> We appreciate that relieving the electric company of liability may leave the "loss on the shoulders of the individual plaintiff, who may be ruined by it." *Ibid.* "But the imposition of tort liability on those who must render continuous service of this kind to all who apply for it under all kinds of circumstances could [also] be ruinous and the expense of litigation and settling claims over the issue of whether or not there was negligence could be a greater burden to the rate payer than can be socially justified." [PROSSER & KEETON, TORTS § 93, at 671].

*Levy*, 798 So. 2d at 780. He then expounded on the policy nature of determinations of common law duty:

> The decision in this type of case is policy driven. The finding of a legal duty or a jury question here would change an electric utility's conduct when faced with power outages. If appellant's allegations are true, that might be a change for the better. However, imposing liability would shift the cost for many traffic accidents [or hurricane related injuries and losses] to the utility and, presumably, to the rate payer through increased power rates.
>
> . . . .
>
> The drastic shift in policy which Levy seeks is more properly made on a statewide basis by the supreme court or by the legislature, the branch of government best suited to weigh and allocate social costs.

*Id.* at 781-82.

We recognize that in *Clay*, the court eschewed the consideration of public policy without an adequate record of what the ruling would mean to utility rates. Yet, in *McCain*, the court recognized that legal duty is imbued with public policy considerations. *McCain*, 593 So. 2d at 503 (considering public policy when distinguishing between foreseeability relating to legal duty and proximate cause foreseeability). Courts frequently use public policy in discussing whether a legal duty of care exists. *See Champion v. Gray*, 478 So. 2d 17 (Fla. 1985), *receded from on other grounds*, *Zell v. Meek*, 665 So. 2d 1048 (Fla. 1995) (invoking public policy to set limits on foreseeability rule); *Knight v. Merhige*, 133 So. 3d 1140 (Fla. 4th DCA 2014) (applying public policy to limit foreseeability

9

analysis of duty).  Similarly, in this case, as in *Levy*, FPL owed no duty to Cooper, a noncustomer, who was injured by FPL's failure to restore power before her injury occurred.  Were we to find such a duty, it would open up public utilities to enormous liability for every conceivable injury, both personal and property, which may occur during a power outage.  And to have a jury assess the adequacy of FPL's plans and performance during an event, such as an outage due to a hurricane, would interfere with the extensive regulation of public utilities already required through the Public Service Commission.  *See Fla. Chapter 366, Public Utilities.*  Such a "drastic shift" of liability to a public utility is more properly made by the legislature or Public Service Commission.

Because we conclude that under the facts as alleged in the complaint the court properly determined that FPL owed no duty to a non-customer as part of the general public, we affirm the final judgment of dismissal.

FORST, J., and WALSH, LISA S., Associate Judge, concur.

*  *  *

***Not final until disposition of timely filed motion for rehearing.***