DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SUN GAS MARKETING & PETROLEUM LLC,**
Appellant,

v.

**BJ'S WHOLESALE CLUB INC.,**
Appellee.

No. 4D2023-0075

[February 21, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michele Towbin Singer, Judge; L.T. Case No. CACE19024520.

George W. Hatch, III, Robert D. Fingar, Dwight O. Slater and Alexander S. Whitlock of Guilday Law, P.A., Tallahassee, for appellant.

Kevin A. Reck and Emily J. Lang of Foley & Lardner, LLP, Orlando, and James A. McKee of Foley & Lardner, LLP, Tallahassee, for appellee.

George W. Hatch, III, Robert D. Fingar, Dwight O. Slater and Alexander S. Whitlock of Guilday Law, P.A., Tallahassee, for Amicus Curiae Florida Petroleum Marketer Association, Inc.

WARNER, J.

Appellant, Sun Gas Marketing and Petroleum, LLC, appeals a final summary judgment granted in favor of appellee, BJ's Wholesale Club, Inc. Sun Gas claimed that BJ's was violating Florida's Motor Fuel Marketing Practices Act ("MFMPA") by selling gas below cost to its club members. The trial court held that BJ's is not a "retail outlet" under the MFMPA because the court construed the MFMPA as requiring sale to the general public to come under its provisions. We affirm the final judgment, concluding that BJ was not selling to the "motoring public" when it sold fuel only to its members and not the general motoring public.

## Facts

The facts of this case are not disputed. BJ's is a membership-only wholesale club. BJ's operates a gas station at its Parkland location, where it sells motor fuel to members of its wholesale club. Sun Gas operates a Chevron gas station approximately 0.1 miles away from BJ's location. The issue in this case is whether BJ's qualifies as a "retail outlet" under the MFMPA.

### (1) The MFMPA

Under the MFMPA, "[i]t is unlawful for any nonrefiner engaged in commerce in this state to sell any grade or quality of motor fuel at a retail outlet below nonrefiner cost, where the effect is to injure competition." § 526.304(1)(b), Fla. Stat. (2019). A "retail outlet" is "a facility, including land and improvements, where motor fuel is offered for sale, at retail, to the motoring public." § 526.303(14), Fla. Stat. (2019). The term "motoring public" is not defined under the MFMPA.

### (2) Underlying Litigation

Sun Gas filed a complaint for injunctive relief, declaratory judgment, and damages against BJ's, alleging that BJ's was violating the MFMPA by selling motor fuel to the motoring public below nonrefiner cost, injuring Sun Gas, which was in direct competition with BJ's for motor fuel sales. After a motion to dismiss was denied, BJ's filed an answer and affirmative defenses.

During discovery, BJ's corporate representatives testified that BJ's is a member club and a retail business. Nonmembers cannot purchase motor fuel at a BJ's gas station, including its Parkland location. A sign at BJ's gas station conspicuously states that gas is sold to members only. Although BJ's offers one-day passes for nonmembers to shop at the wholesale club, nonmembers could not use a one-day pass to purchase motor fuel. However, anyone who is over eighteen years old could sign up for a membership and purchase motor fuel at a BJ's gas station on the same day.

BJ's advertises its low motor fuel prices to incentivize nonmembers to purchase memberships. A radio advertisement stating: "BJ's Gas is now open in Parkland . . . members can now take advantage of our everyday low prices on quality gas and diesel fuel . . . Not a BJ's member? Join today . . . and start saving on gas . . ." was played hundreds of times on

local radio stations in June 2019.  BJ's also distributed a mailer to over 50,000 people, both members and nonmembers, advertising "[s]uper-low gas prices—exclusively for members" and "[j]oin to save big at the pump and in the club too."

After discovery, the parties filed competing motions for summary judgment.  BJ's argued that it is not a "retail outlet" because it sells and advertises sale of motor fuel only to its members and not the entire "motoring public."  BJ's also argued that to the extent it advertises sale of motor fuel to the entire "motoring public," this is not governed by the MFMPA because BJ's does not advertise to the "motoring public" from its Parkland location.

Sun Gas argued that BJ's is a "retail outlet" because by selling motor fuel to its members, BJ's is selling motor fuel to members of the "motoring public."  Sun Gas also argued that BJ's advertises the sale of motor fuel to the "motoring public," including nonmembers, and the fact that the advertisements did not originate from BJ's Parkland location was irrelevant.

After a hearing on the cross-motions, the trial court entered an order granting BJ's motion for summary judgment and denying Sun Gas's motion.  The trial court found that BJ's only sells motor fuel to its members, who are a subset of the "motoring public," not the more general motoring public.  The trial court also found that BJ's Parkland location does not advertise sale of motor fuel to the "motoring public," but rather only advertises memberships.  Accordingly, the trial court held that BJ's is not a "retail outlet" under the MFMPA, and thus BJ's is not governed by the MFMPA.  This appeal follows.

## Analysis

We review *de novo* an order granting summary judgment and issues of statutory interpretation.  *Leon v. Pena*, 274 So. 3d 410, 412 (Fla. 4th DCA 2019) ("The standard of review for an order granting summary judgment is *de novo*."); *Therlonge v. State*, 184 So. 3d 1120, 1121 (Fla. 4th DCA 2015) ("We review issues of statutory interpretation *de novo*.").

The MFMPA provides that "[i]t is unlawful for any nonrefiner engaged in commerce in this state to sell any grade or quality of motor fuel at a retail outlet below nonrefiner cost . . . ."  § 526.304(1)(b), Fla. Stat. (2019).  BJ's does not dispute that it is a nonrefiner engaged in commerce in this

state selling motor fuel. The only issue on appeal is whether BJ's is a "retail outlet" under the MFMPA.

Under the MFMPA, a retail outlet is "a facility, including land and improvements, where motor fuel is offered for sale, at retail, to *the motoring public*." § 526.303(14), Fla. Stat. (2019) (emphasis supplied). The trial court concluded that "the motoring public" meant the general public and not simply any member of the motoring public. We agree with the trial court's construction of the statute.

## Plain Meaning of the Statute

"It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis." *State v. J.M.*, 824 So. 2d 105, 109 (Fla. 2002). However, "[i]f the language of a statute is clear and unambiguous, the legislative intent must be derived from the words used without involving rules of construction or speculating as to what the legislature intended." *Fla. Birth-Related Neurological Inj. Comp. Ass'n v. Dep't of Admin. Hearings*, 29 So. 3d 992, 997 (Fla. 2010) (quoting *Kephart v. Hadi*, 932 So. 2d 1086, 1091 (Fla. 2006)).

When the legislature has not defined words in a statute, the language should be given its ordinary meaning, for which courts frequently look to the dictionary. *See Nunes v. Herschman*, 310 So. 3d 79, 82 (Fla. 4th DCA 2021). Merriam-Webster's dictionary defines "public" in this context as "of or relating to people in general." *Public*, Merriam-Webster, https://www.merriam-webster.com/dictionary/public (last visited January 3, 2023); *see also Public*, Dictionary.com, https://www.dictionary.com/browse/public (last visited January 3, 2023) (defining the noun "public" as "the people constituting a community, state, or nation."). Thus, using the dictionary definition of the term "public," under the MFMPA the "motoring public" refers to Florida drivers as a whole.

Courts also look to previous case law in determining the meaning of statutory terms. *See Nunes*, 310 So. 3d at 82 ("When the meaning of a term is not defined in the statute itself, it is also appropriate to look to case law to ascertain its meaning."). Although it appears that no Florida case has defined the term "motoring public," several cases have used the phrase to refer to the driving population rather than individual drivers. *See Palm Beach Cnty. Bd. of Cnty. Comm'rs v. Salas*, 511 So. 2d 544, 547 (Fla. 1987) ("Palm Beach County had the duty to carry out its maintenance responsibilities in a nonnegligent manner and to warn the motoring public

4

of any known hazards . . . . The county created this danger and confusion and failed to warn the motoring public. It thus breached the duty it owed to the drivers, like the [appellees] who might be injured."); *Selby v. Bullock*, 287 So. 2d 18, 21 (Fla. 1973) ("A key question is whether a fencing requirement or strict liability will have the greatest effect on protecting the motoring public by keeping the cows off the highway."); *see also Dep't of Highway Safety & Motor Vehicles v. DeShong*, 603 So. 2d 1349, 1352 (Fla. 2d DCA 1992) ("The courts of this state have recognized that a legitimate concern for the safety of the motoring public can warrant a brief investigatory stop to determine whether a driver is ill, tired, or driving under the influence in situations less suspicious than that required for other types of criminal behavior."); *Johnson v. Lance, Inc.*, 790 So. 2d 1144, 1146 (Fla. 1st DCA 2001) ("[A] governmental entity in Florida owes a legal duty to the motoring public to *maintain* the traffic lights and stop signs that it undertakes to provide."). Thus, the dictionary definition and Florida case law support the conclusion that the ordinary meaning of "motoring public" is the entire public, rather than members of the public.

Sun Gas argues that our supreme court's decision in *PW Ventures, Inc. v. Nichols*, 533 So. 2d 281 (Fla. 1988), should control this case. In *PW Ventures*, the court considered whether the sale of electricity to a single customer rendered a corporation a "public utility," which was defined as "every . . . corporation . . . or other legal entity . . . supplying electricity or gas . . . to or for the public within this state." *Id.* at 282–83 (quoting § 366.02(1), Fla. Stat. (1985)). The Florida Public Service Commission (PSC) defined the phrase "to the public" as meaning "to any member of the public," and the court affirmed the PSC's ruling. *Id.* at 283–84.

According to Sun Gas, *PW Ventures* compels the conclusion here that by selling motor fuel to members of the public, BJ's sells motor fuel to the public and thus BJ's falls within the MFMPA's purview. We find *PW Ventures* distinguishable. In that case, the court was reviewing an agency's interpretation of its own regulatory statute. The court acknowledged a deferential standard, noting that "the contemporaneous construction of a statute by the agency charged with its enforcement and interpretation is entitled to great weight[,]" and "courts will not depart from such a construction unless it is clearly unauthorized or erroneous." *Id.* at 283. Therefore, in *PW Ventures*, the court could only depart from PSC's definition of "the public" including any member of the public if the definition was completely untenable. However, the comparison between *PW Ventures* and this case is undercut because the deferential standard accorded the PSC by the supreme court no longer exists and Article V, Section 21 of our Florida Constitution, now provides that a court may not

5

defer to an agency interpretation of a statute but must interpret the statute de novo. Thus, *PW Ventures* does not require the conclusion on de novo review that the "motoring public" should be defined as any single motorist.

Based upon plain ordinary meaning analysis, the term "motoring public" refers to the population of drivers as a whole, rather than any individual driver. Under the MFMPA, a "retail outlet" sells motor fuel to the "motoring public." § 526.303(14), Fla. Stat. (2019). BJ's only sells fuel to its members, who are members of the "motoring public" but are not *the* "motoring public." Thus, BJ's is not a "retail outlet" as defined in section 526.303(14). Section 526.304(1)(b), Florida Statutes (2019), clearly and unambiguously provides that "[i]t is unlawful for any nonrefiner engaged in commerce in this state to sell any grade or quality of motor fuel *at a retail outlet* below nonrefiner cost . . . ." *Id.* (emphasis supplied). Therefore, section 526.304(1)(b)'s clear and unambiguous language does not apply to BJ's sale of motor fuel.

**Legislative History and Canons of Construction**

Even if we were to conclude that the term the "motoring public" is ambiguous, "where the statute is ambiguous, the court 'may resort to the rules of statutory construction, which permit [the court] to examine the legislative history to aid in [the] determination regarding legislative intent.'" *Med. Ctr. of Palm Beaches v. USAA Cas. Ins. Co.*, 202 So. 3d 88, 90 (Fla. 4th DCA 2016) (alterations in original) (quoting *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013)). Although the legislative history itself provides no definitive answer as to legislative intent, it provides some insight, and canons of construction support our conclusion.

The original statute was passed in 1985. In 2000, bills were introduced in both the House and the Senate that would have amended the definition in section 526.303(14) of "retail outlet" to include "any facility which sells only to members." 2000 Fla. H.B. 755 at 2–3 (Mar. 7, 2000); 2000 S.B. 810 at 2–3 (Mar. 7, 2000). The proposed bills had the stated intent of clarifying existing law, but both bills died in committee. *Id.* The failure of the legislature to adopt the bill provides some evidence, albeit weak, that the legislature did not approve that definition in the statute. *See, e.g., Don King Prods., Inc. v. Chavez*, 717 So. 2d 1094, 1095 (Fla. 4th DCA 1998) ("The courts may properly take notice of changes made to a bill during the process of enactment.").

However, in 2023, a bill was introduced in the House that would have changed the definition of "retail outlet" under section 526.303(14) to mean "a facility, including land and improvements, where motor fuel is offered for sale, at retail, to *any member* of the motoring public." 2023 Fla. H.B. 705 (Feb. 9, 2023) (emphasis supplied). Unlike the proposed bills in 2000, this proposal had no stated intent to clarify existing law. Had the bill passed, it would have modified, rather than clarified, the definition of "retail outlet." But the bill was withdrawn. *See* 2023 Fla. H.R.J. Reg. Sess., No. 1 (Mar. 7, 2023) (noting HB 705 as "withdrawn"). Therefore, while the legislature had the opportunity to address this issue directly, it did not.

Applicable canons of construction support our construction of the statute. "[I]t is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage." *Am. Home Assurance Co. v. Plaza Materials Corp.*, 908 So. 2d 360, 366 (Fla. 2005) (quoting *Hechtman v. Nations Title Ins.*, 840 So. 2d 993, 996 (Fla. 2003)). Interpretation of the "motoring public" as applying to any member of the motoring public would render the phrase meaningless and violate the rule against surplusage. No difference would exist between defining a retail outlet as "a facility, including land and improvements, where motor fuel is offered for sale, at retail, to the motoring public," and "a facility, including land and improvements, where motor fuel is offered for sale, at retail."

While Sun Gas argues the phrase can also distinguish between selling motor fuel to boaters or pilots, the MFMPA's definition of "retail outlet" already distinguishes drivers from boaters or pilots by providing that a "retail outlet" is "a facility . . . where motor fuel is offered for sale . . ." and defining "motor fuel" as "any petroleum product, including any special fuel, which is *used for the propulsion of motor vehicles*." § 526.303(5), (14), Fla. Stat. (2019) (emphasis added). Boats and airplanes are distinct from "motor vehicles." *See, e.g.*, Art. VII, § 1(b), Fla. Const. (distinguishing between motor vehicles, boats, and airplanes for purposes of taxation). Thus, the MFMPA already excludes fuel sales to boaters and pilots.

## Legislative Intent

Sun Gas also argues that failing to include membership gas clubs within the terms of the MFMPA is contrary to the specific legislative intent to encourage competition, as such failure would injure traditional gas stations. We disagree. First, interpreting the statute as Sun Gas proposes

may contravene legislative intent. While the MFMPA clearly is intended to ensure competition in the motor fuel market, the MFMPA does not state any intention to protect traditional gas stations. Further, "[e]ven where a court is convinced that the legislature really meant and intended something not expressed in the phraseology of the [statute], it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity." *St. Petersburg Bank & Tr. Co. v. Hamm*, 414 So. 2d 1071, 1073 (Fla. 1982) (first alteration in original) (quoting *Van Pelt v. Hilliard*, 78 So. 693, 694 (Fla. 1918)). Whether to include membership clubs in the MFMPA is a decision to be addressed by the legislature, not the courts.

## Advertising

Finally, Sun Gas argues that even if BJ's does not sell motor fuel to the "motoring public," BJ's at least advertises the sale of motor fuel to the "motoring public." Under the MFMPA, a "retail outlet" is "a facility, including land and improvements, where motor fuel is offered for sale, at retail, to the motoring public." § 526.303(14), Fla. Stat. (2019). "Sale" or "sell" means "any transfer, gift, sale, offer for sale, or advertisement for sale in any manner or by any means whatsoever . . . ." § 526.303(15), Fla. Stat. (2019). Therefore, a retail outlet could be considered "a facility . . . where motor fuel is [advertised] for sale, at retail, to the motoring public."

While BJ's motor fuel themed advertisements are not limited to members, as are its motor fuel sales, all the advertisements are clear that only BJ's members may purchase motor fuel at BJ's. Even the sign advertising BJ's daily motor fuel prices conspicuously says, "Members Only." The advertisements offer cheaper motor fuel as a perk of BJ's membership. As the trial court found, BJ's advertises memberships to the "motoring public," not the sale of motor fuel. Therefore, we do not deem BJ's advertising as violating the MFMPA.

## Conclusion

The plain and ordinary meaning of "the public" is people as a whole. Thus, the meaning of "the motoring public" must be understood as motorists as a whole. The MFMPA unambiguously defines a "retail outlet" as a facility that sells motor fuel to the "motoring public." Since BJ's only sells motor fuel to its members and not all motorists, BJ's is not a "retail outlet" within the statutory definitions. Even if the definition of "motoring public" is ambiguous, the interpretation of "the motoring public" as referencing the general public and not a limited subset finds some support

8

in the legislative history and canons of construction. Finally, BJ's advertising of its membership price for gasoline does not violate the statute. If the statutory language is inconsistent with the broader legislative intent to encourage competition, Sun Gas should look to the legislature for amendment of the statutory definition.

*Affirmed.*

KLINGENSMITH, C.J., and CIKLIN, J., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

9